No. 47,177

STATE OF KANSAS, *Appellee,* v. WILLIAM JOSEPH COLIN, *Appellant.*

(519 P. 2d 629)

Opinion filed March 2, 1974.

*John T. Verbanic,* of Kansas City, argued the cause, and was on the brief for the appellant.

*Nick A. Tomasic,* District Attorney, argued the cause, and *Vern Miller,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal proceeding in which the defendant-appellant, William Joseph Colin, was convicted of murder in the first degree. The trial court sentenced the defendant to life imprisonment. The facts in the case are not greatly in dispute and are as follows: On September 17, 1971, Annette Comstock, a retired elderly school teacher, was found dead at her home in Kansas City, Kansas. She had been strangled to death after being robbed of cash and other personal belongings. After investigation the police found that subsequent to the murder a $400 check had been cashed on Miss Comstock's bank account. They obtained a description of the party who cashed the check as well as his name and the number of his driver's license. The finger of guilt pointed directly at the defendant, William Joseph Colin. On September 20, 1971, police officers went to the residence of the defendant's common-law wife, Donna Lasiter Colin. When the police officers first arrived they observed in the driveway a 1953 Chevrolet which matched the description of an automobile parked in front of the victim's house on the day of the murder. Shortly thereafter Donna Lasiter Colin arrived home and was

taken by the officers to police headquarters. The 1953 Chevrolet was taken into custody and towed to the police station. At the police station Donna Lasiter Colin signed a waiver of search form consenting for the police to search the 1953 Chevrolet. The search produced an electric cord and plug which had been taken from the home of the victim, Annette Comstock.

At the police station Mrs. Colin advised the police that the defendant had boarded a bus that very day and was enroute to California. The Kansas City police then telephoned the sheriff's office in Colby, Kansas, requesting the sheriff to apprehend the defendant when the bus arrived in Colby. At 11:20 p. m. on September 20 the sheriff at Colby arrested the defendant, Colin, and placed him in the county jail. At 7 o'clock a. m. on the morning of September 21 three Kansas City police officers arrived in Colby with instructions to return Colin to Kansas City. At the time Colin was arrested in Colby he had in his possession a handbag which contained some personal belongings as well as a set of keys and a red purse belonging to the victim. The handbag was examined by the Colby sheriff's office and also by the Kansas City detectives and the contents were inventoried. It is undisputed that the defendant was advised of his constitutional rights by means of the *Miranda* warning when he first encountered the Kansas City detectives at the Colby jail. The defendant stated that he wanted to talk to an attorney before he made any statement. No further interrogation was conducted by the police officers. The only conversation between the police officers and the defendant concerned the contents of the defendant's handbag which the defendant identified. He identified the red purse as belonging to Annette Comstock. The Kansas City officers then proceeded to return the defendant to Kansas City in their automobile. During the trip they stopped at Salina to have lunch. According to the police officers after they and the defendant had sat down at a table in a restaurant, the defendant volunteered the question as to what was the penalty for murder. Officer Supica advised him that it would depend on what sentence the judge thought was appropriate under the circumstances. According to the police officers the defendant volunteered that it did not make much difference and then stated to the officers that he had committed the murder of Annette Comstock.

The defendant testified that he did not volunteer the information

but made the statement as a result of being interrogated by Officer Supica. The defendant made no further statement in Salina and the party proceeded to Kansas City. Upon their arrival the defendant was immediately taken to police headquarters where he was again given the *Miranda* warning and was also advised of his rights in regard to participation in a lineup. Magistrate Judge Smith appointed an attorney, Robert Feiring, to represent the defendant. Robert Feiring consulted with William Colin and also with Mrs. Colin at the police station. At the conclusion of this private conversation, Robert Feiring advised the police officers that the defendant wanted to confess and tell the truth and that he would sign a lineup waiver form. The defendant then signed a lineup waiver form. He also signed a form acknowledging that he had been advised of his constitutional rights as required by *Miranda* and stating that he desired to make a statement. Immediately thereafter the defendant participated in the lineup where he was identified by several witnesses. He then proceeded to make a statement in which he confessed to the commission of the murder. In due time the defendant was tried to a jury and convicted of murder in the first degree. Defendant's motion for a new trial was overruled and he has appealed to this court.

Prior to trial the defendant filed a motion to suppress his oral and written statements made during the course of the trip to Kansas City and later at the Kansas City police headquarters. Defendant contended that these statements were coerced and involuntarily given and that he did not intelligently waive his constitutional rights. In *State v. Creekmore*, 208 Kan. 933, 495 P. 2d 96, we stated that the essential inquiry in determining the voluntariness of a statement is whether the statement was the product of the free and independent will of the accused. Generally if the accused was not deprived of his free choice to admit, deny or refuse to answer, the statement may be considered voluntary. We further held that when the trial court conducts a full preliminary inquiry on the admissibility of an extrajudicial statement given by an accused, determines the statement was freely, voluntarily and intelligently given and admits the statement into evidence at the trial, this court on appeal should accept that determination if it is supported by substantial competent evidence. Here the trial court conducted a full preliminary inquiry on the question of the admissibility of the defendant's statements. The record discloses that

all three of the Kansas City police officers testified that the defendant first instituted the conversation by asking what the penalty for murder was and then proceeded to state to the officers that he was the one who killed Annette Comstock. All three officers further testified that there was no interrogation on their part and that the statement given by the defendant was voluntary. It is important to note that when the defendant testified he did not deny making the statement and never once said that he was interrogated while he was having lunch at Salina. It seems clear to us that there was substantial competent evidence to support the trial court's finding that the defendant's oral statement made at the Salina restaurant was voluntary and not the result of an in custody interrogation. The record further shows that the written statement made by the defendant at the Kansas City police headquarters was obtained after the defendant was given a full opportunity to consult with his counsel, Robert Feiring. In view of the record before us we find that the defendant's constitutional rights were protected and that any incriminating statements that he made were voluntary and admissible.

The defendant's second point on this appeal is that the incriminating evidence found in the 1953 Chevrolet was not admissible because it was the product of an illegal search in violation of the defendant's constitutional rights. The trial court conducted a hearing on the question of whether or not to suppress the evidence obtained from the search of the 1953 Chevrolet and held that the search was valid and that the evidence was admissible. The evidence presented to the trial court was somewhat in conflict. According to the police officers when they went to Donna Lasiter Colin's home on September 20 and discovered the 1953 Chevrolet parked in the driveway, they shined their flashlights on the inside through the glass windows. They further testified that the 1953 Chevrolet answered the description of a vehicle observed at the victim's home on the day of the murder. The 1953 Chevrolet was towed to police headquarters where a waiver of search form was signed by Mrs. Colin. Mrs. Colin testified that she observed the police officers searching the vehicle at her place of residence when she returned home and was taken into custody and further stated that she signed the waiver of search form because of threats from the police officers. Mrs. Colin does not deny that she signed the waiver of search form and that the search of the 1953 Chevrolet

was thereafter conducted at the police station where the incriminating evidence was found in the vehicle. From the record we find that there is substantial competent evidence to support the findings of the trial court that the search of the vehicle was conducted after Mrs. Colin had given her written consent for the search and that such consent was voluntary. Under the circumstances we cannot say that there were constitutional infirmities in the search of the 1953 Chevrolet or that the trial court erred in admitting the incriminating articles into evidence.

The defendant's third point is that the trial court erred in admitting into evidence the victim's keys and purse which were disclosed in the search of his handbag in Colby. The arrest in Colby occurred on the bus and the defendant's handbag was immediately taken into custody by the sheriff. The appellant argues that since he was incarcerated he was unable to destroy any evidence and that he could neither harm himself or the officers while he was in jail. Hence the defendant contends that there was no need to search his handbag without first obtaining a search warrant. We cannot agree that the search of the defendant's handbag was constitutionally impermissible under the circumstances. In the first place the arresting officer in Colby had been informed by Kansas City police officers that the defendant was wanted for murder in Kansas City and that he was to arrest the defendant when the bus arrived in Colby. Since the defendant was arrested on a charge of first-degree murder, the officer had probable cause to believe that items in the possession of the defendant could well be the fruits or evidence of the crime and thus subject to seizure incidental to a lawful arrest. Furthermore, the search of defendant's handbag can be justified on the basis of a jailhouse inventory necessary both to preserve the property of the accused while he is in jail and to forestall the possibility that the accused may later claim that some item has not been returned to him. (*State v. Undorf*, 210 Kan. 1, 499 P. 2d 1105.)

As his fourth point the defendant takes the position that the trial court erred in denying him a change of venue. The defendant sought a change of venue because of publicity the case had received in local newspapers, television and radio broadcasts, and the True Detective Magazine, which is sold in Wyandotte county. In his motion the defendant further alleged that the victim, Miss Comstock, was well-known and an active community worker. The

defendant failed to present any affirmative evidence, whatsoever that prejudice in the community existed. There is nothing in the record to show that there was difficulty in selecting a jury or that any of the members of the jury panel had ever heard of the case prior to the trial. The allowance or refusal of an application for change of venue in a criminal proceeding rests largely in the discretion of the trial court. (*State v. Anderson*, 202 Kan. 52, 446 P. 2d 844.) A trial court, may in its discretion properly deny a motion to change venue, when the defendant in a criminal action fails to present affirmative evidence that prejudice exists so as to make it reasonably certain that he cannot obtain a fair trial. (*State v. Lamb*, 209 Kan. 453, 497 P. 2d 275.) On the record before us here we cannot say that the trial court abused its discretion in denying the defendant's motion for a change of venue.

Finally the defendant contends that the lineup evidence should not have been admitted because photographs of the defendant were shown to prospective witnesses prior to the lineup identification. We agree with the defendant that under such circumstances it is always necessary to scrutinize any pretrial confrontation between a person suspected of committing a crime and identifying witnesses. The due process clause of the Fifth and Fourteenth Amendments to the United States Constitution forbids a lineup that is unnecessarily suggestive or conducive to irreparable mistaken identification. This rule applies even though the person suspected of committing a crime has no constitutional right to counsel. (*State v. McCollum*, 211 Kan. 631, 507 P. 2d 196.) Here the defendant filed a motion to suppress the lineup identification and a hearing was held thereon prior to trial. The trial court found that the lineup was not improper and therefore testimony concerning the identification of the appellant at the lineup could be presented to the jury at the trial. After examining the record before us we are unable to say that the trial court abused its discretion in overruling the defendant's motion to suppress the lineup identification. All of the witnesses testified without contradiction that no one suggested to them in any way whom they should identify. The teller of the bank where the defendant cashed the victim's check, testified that the defendant was directly in front of her for two or three minutes and that he was no more than two feet away from her and that she got a good look at his face. The lineup was conducted after the defendant had consulted with his

appointed counsel, Robert Feiring, and after he had signed a written consent to the lineup. We cannot say that under the totality of circumstances here the lineup identification was so unnecessarily suggestive as to give rise to a substantial likelihood of misidentification.

For the reasons set forth above the judgment of the district court is affirmed.