No. 48,163

STATE OF KANSAS, *Appellee,* v. RICHARD L. NESMITH, *Appellant.*

(551 P. 2d 896)

Opinion filed June 12, 1976.

*William D. Mize,* public defender, argued the cause and was on the brief for the appellant.

*James L. Sweet,* county attorney, argued the cause and *Curt T. Schneider,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Richard L. Nesmith appeals from convictions for aggravated burglary and felony theft.

In the early morning of September 22, 1974, Tanya Ayers returned with her date to the home of her parents in Salina. She observed a person carrying something and walking between her home and that of a neighbor. The stranger disappeared and a car engine soon started; she and her date then followed a car which left from down the street. They observed two persons in that car; the driver appeared to be a man. She later was able to observe the driver, whom she identified as Nesmith, when his car turned a corner and the lights of her vehicle shone on him. After making a U-turn she was also able to observe the passenger, the defendant's wife.

Upon Miss Ayers' return home her parents were aroused and it was established that property was missing from the house. The police were notified and Officer Ivey arrived about 2:30 a. m. Proceeding to the address to which the suspicious vehicle had been trailed the officer found Nesmith and his wife in the front seat of the car and placed them both under arrest.

The suspects and car were taken to the police station where the couple was booked and searched, and where the car was searched pursuant to a warrant. Mr. Ayers' lighter, pocketknife and silver dollar were found in the defendant's pocket and his watch was found hanging from the gearshift of the car. His wallet containing $73 in cash, Mrs. Ayers' purse containing $30 in cash, an ice bucket, a teapot, and a number of other household items identified by the Ayerses were found near the scene of the arrest.

Later that morning Tanya Ayers was called to the police station to make out reports. At that time she observed a photograph of the defendant lying on a desk, and she also observed the defendant himself seated in the booking cage. She testified that neither the photo nor the defendant were in any way called to her attention, nor was she at that time asked to identify either.

Four trial errors are alleged:

Appellant first claims error in permitting Tanya Ayers to make an in-court identification. The contention is that her identification was tainted by allowing her to view the single photo of Nesmith and to observe him in the booking cage. The test to be applied to the booking cage observation is whether in the totality of circumstances the incident was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny due process of law.

(*Stovall v. Denno*, 388 U. S. 293, 302, 18 L. Ed. 2d 1199, 87 S. Ct. 1967. See also, *Neil v. Biggers*, 409 U. S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375; *State v. Deffenbaugh*, 217 Kan. 469, 536 P. 2d 1030.) Similarly, the test as to the photographic identification is whether it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (*Simmons v. United States*, 390 U. S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967. See also, *State v. Colin*, 214 Kan. 193, 519 P. 2d 629.)

In *Neil v. Biggers*, supra, the United States Supreme Court enumerated the factors to be considered in evaluating the likelihood of misidentification: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Applying those factors, we note that Tanya had clearly seen the defendant in her headlights only a matter of hours prior to the station house identification and that she was unaided in recognizing the photo and the defendant at the police station.

As she further testified, neither the photo nor the defendant in the booking cage were brought to her attention. In the case of the photo it was simply lying on the desk and she picked it up and recognized the man she had seen earlier in her headlights. This case is therefore unlike those cited by appellant: *Kimbrough v. Cox*, 444 F. 2d 8 (4th Cir. 1971); *United States v. Fowler*, 439 F. 2d 133 (9th Cir. 1971); *Mason v. United States*, 414 F. 2d 1176 (D. C. Cir. 1969). In each of those cases the police approached the witness with a single photo and asked if that was the man. It also differs from *United States v. Clark*, 289 F. Supp. 610 (E. D. Pa. 1968), cited by appellant, wherein witnesses viewed a group of men through a one-way mirror. That identification, much like a lineup, was improper due to lack of counsel under *United States v. Wade*, 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; and *Gilbert v. California*, 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951.

In *State v. Kearns*, 211 Kan. 158, 505 P. 2d 676, cert. den. 414 U. S. 841, 38 L. Ed. 2d 77, 94 S. Ct. 96, this court considered a similar situation in which the complainant Zimmerman was called to the station to identify recovered property. While there he saw the men arrested for the crime at the far end of a room he passed through, and was told that the pair was being booked for stealing the items he came to identify. We said:

". . . At a pretrial hearing on appellant's motion to suppress Zimmerman testified that, while his glimpse of the two suspects at the police station may have jogged his memory, his identification of appellant was definitely based on what he saw in his store, and not on what he saw at the police station. . . . In addition, it is clear that such encounter as there was came about inadvertently, and not through any solicitation, ruse or scheme of the police. Zimmerman thought the information that appellant and Roberts were suspects came to him from a non-police connected source—he wasn't sure. Further, although the exact time of the incident does not appear in the record it does appear that Zimmerman was at the police station 'that evening,' following appellant's arrest at about 6:30 p. m. See *State v. Kress,* 210 Kan. 522, 502 P. 2d 827; *State v. Meeks,* 205 Kan. 261, 469 P. 2d 302, and cases cited. These factors—the short interval of time, the inadvertance, the independent in-court identification—together lead us to conclude that Zimmerman's identification of appellant was properly received." (pp. 161-2.)

*Kearns* was followed in *State v. Deffenbaugh,* supra. There the complainant Menzie was called to the courthouse for a lineup and immediately upon emerging from an elevator recognized the defendant in a crowd and so informed a police officer. This court noted:

". . . In regard to the confrontation between Menzie and defendant in the hall of the courthouse prior to the lineup the evidence is undisputed that it occurred through mere chance or accident. In *State v. Kearns,* [supra], we held that the fact a witness may have inadvertently observed the defendant at the police station within a few hours of his arrest does not render inadmissible an independent in-court identification based primarily on the witness's observations at the scene of the crime." (217 Kan. at 472.)

Even if it be assumed the station-house procedures were irregular, the in-court identification stands on its own. "If an in-court identification is based on a witness' observation at the time of the occurrence, the in-court identification is capable of standing even though the pretrial identification procedures may have been deficient [citations omitted]." (*State v. Estes,* 216 Kan. 382, 386-7, 532 P. 2d 1283. And cf., *United States v. Wade,* supra at 240.) The witness here had an opportunity to view the defendant in circumstances so suspicious that her attention would have been focused closely on his features. She testified that her in-court identification was based solely on those observations, unaided by anything occurring later. Her observations were sufficient to afford an independent basis for the in-court identification, and it was not error to permit her to make it.

Appellant next contends that his arrest was without probable cause, and thus the trial court erred in refusing to suppress evidence seized both from the defendant and from the automobile. The

motion to the trial court went only to items taken from the car and was doubtless denied since the search was made pursuant to a warrant. Since the trial court had no opportunity to rule as to items taken from the person, the point is not properly before us. *State v. Jones,* 214 Kan. 568, 521 P. 2d 278; *State v. Osbey,* 213 Kan. 564, 517 P. 2d 141. Nevertheless, the facts as previously stated establish probable cause sufficient to support a warrantless arrest. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man's believing that a crime has been committed at or before the time of arrest." (*State v. Curtis,* 217 Kan. 717, 721, 538 P. 2d 1383; *State v. Brown,* 198 Kan. 473, 477, 426 P. 2d 129.) The defendant was observed in the early morning hours carrying something away from the scene of a burglary and was followed to the place where he was arrested. These circumstances furnished probable cause for the arrest. The search, being incident to a valid arrest, was not unreasonable. *State v. Clark,* 218 Kan. 726, 544 P. 2d 1372; *State v. Tygart,* 215 Kan. 409, 524 P. 2d 753.

Appellant's third point is that the conviction for aggravated burglarly is unsupported by the evidence. The contention is without merit. In addition to the facts already stated, Mr. and Mrs. Dallas Ayers, Tanya's parents, testified that the stolen items had been in the house when Mrs. Ayers retired at 12:30 a. m.

K. S. A. 21-3716 provides:

"Aggravated burglary is knowingly and without authority entering into or remaining within any building . . . in which there is some human being, with intent to commit a felony or theft therein."

Entry, like any element of a crime, may be proven by circumstantial evidence. *State v. Townsend,* 201 Kan. 122, 439 P. 2d 70, and cases cited therein. Clearly, human beings were in the house, as well as the objects stolen, when the Ayerses went to bed. Their property was gone when they woke up. This is sufficient evidence from which the jury could have found that someone entered the Ayers house, without authority, while they were there, with intent to steal.

Finally, appellant claims the theft conviction must be reversed because the trial court did not instruct the jury that it had to find the value of the stolen property to be of the value of fifty dollars or more. Below no objection was made to the instruction given, and no request was made for any additional instruction. We therefore cannot review the point unless the omission was clearly erroneous. K. S. A. 22-3414 (3); *State v. Smith,* 215 Kan. 865, 528 P. 2d 1195.

In *State v. Smith,* supra, the defendant was convicted of criminal damage to property. Like theft, that crime has two degrees, the demarcation between felony and misdemeanor being $50 in damage. The trial court did not instruct on the lesser degree and denied a motion for a finding of guilty on the lesser offense. This court noted:

"In charging the jury in a criminal case, it is the duty of the district court to define the offense charged, stating to the jury the essential elements of the crime, either in the language of the statute or in appropriate and accurate language of the court." (p. 866.)

The court went on to quote K. S. A. 21-3107 (3), requiring an instruction on lesser included offenses of which the accused might be found guilty under the charge and "upon the evidence adduced." Since the evidence in that case did not incontrovertibly establish the amount of the damage, the omission was found to be clearly erroneous. The court therefore set aside the felony sentence and ordered the defendant resentenced for a misdemeanor.

*State v. Piland,* 217 Kan. 689, 538 P. 2d 666, presented the same problem in the context of a theft case: the instruction on theft failed to include the element of value. The property stolen was an uncertain quantity of candy, cookies, gum and money from a vending machine. Piland, however, unlike the defendant here, objected to the instruction. The trial court had justified its refusal to instruct on value because it found no basis in the evidence from which the jury could have found the value of the stolen property to be less than $50. This court said:

". . . We do not regard the evidence as quite that conclusive or compelling. The sole testimony of value came from Mr. Criser, who operated the vending machine. He testified there was approximately fifty dollars ($50) lost on merchandise and twenty-five dollars ($25) in nickels, but his figures as to the merchandise loss were obviously estimates. Mr. Criser's testimony wavered between retail and wholesale value; he had not counted nor did he know how much stock remained in the machine after the theft; and he 'guessed' how much stock was held in storage.

"The defendant contended at the trial that the jury should evaluate the testimony given by Mr. Criser, 'as the jury may not believe all what [sic] the owner of the vending machine . . . testified.' In view of the equivocal nature of portions of Mr. Criser's testimony we are inclined to agree that value was in issue." (p. 692.)

The result was a reversal, consistent with our holding:

"Where, in a prosecution for theft under K. S. A. 21-3701 (Weeks 1974), the value of the property stolen is in issue, the trial court should instruct the

jury with respect to the element of value and should require the jury to make a finding as to value." (Syl. Para. 3.)

Here, of course, there was no issue as to value. Currency in the amount of $103 was recovered, together with the watch, knife, silver dollar, and other property. The defendant's testimony was that someone stole his automobile—it was returned, someone ran away, and defendant and his wife got into it shortly before their arrest. The question presented to the jury was not how much was stolen, but who stole the $103.

The instruction given was PIK Criminal § 59.01, before its 1975 amendment by the PIK committee. In its present form the pattern instruction, in an obvious response to *Piland*, requires the jury to find the value of the stolen property. There is no doubt the present version reflects the better practice.

The question remains whether the omission is fatal to the conviction here. The problem is closely related to that of lesser included offenses. An instruction on such an offense is required only where there is some evidence to support a conviction of the lesser crime. *State v. Ponds and Garrett*, 218 Kan. 416, 543 P. 2d 967; *State v. Smith*, supra; *State v. Masqua*, 210 Kan. 419, 502 P. 2d 728. Here, with no dispute as to the $103 stolen, an instruction on misdemeanor theft was clearly not required, even if one had been requested. When the jury was instructed on, and found the presence of, all the statutory elements of "theft," the conviction here was necessarily for felony theft. We conclude the omission of the element of value under these circumstances was not "clearly erroneous" so as to require reversal in the absence of an objection.

The convictions are affirmed.

APPROVED BY THE COURT.