No. 50,758

STATE OF KANSAS, *Appellee,* v. JAMES L. REED, *Appellant.*

(601 P.2d 1125)

Opinion filed October 27, 1979.

*Camille Nohe,* of Topeka, argued the cause, and *Albert D. Keil,* of Topeka, was with her on the brief for the appellant.

*Gene M. Olander,* district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Joan M. Hamilton,* assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, James L. Reed, appeals from convictions by a jury of rape (K.S.A. 21-3502) and aggravated kidnapping (K.S.A. 21-3421). The critical issue at trial was the identification of defendant as the perpetrator of the crimes charged.

Summarized, the State's evidence disclosed that on the evening of June 16, 1978, the victim was walking to Stormont-Vail Hos-

pital in Topeka where she was employed as a nurse's aide. Her hours of employment were from 11:00 p.m. to 7:00 a.m. When she was about three blocks from the hospital she was accosted by a man, armed with a knife, who grabbed her around the neck and forced her into an automobile.

The assailant drove through the city to southeast Topeka where they reached a place described by the victim as a grassy, weedy field. The assailant was armed with a knife during the entire period and also threatened the victim with a gun but never produced it. The assailant forced the victim to remove her clothing, walk across the street to a field and lie down in a place where the weeds were high where he raped her. The assailant then drove the victim to a point a few blocks from the hospital and released her.

The victim ran to the hospital and informed her supervisor of the events which had occurred. A "rape kit" examination was immediately performed and the victim's clothing was taken. The victim was then taken to the Topeka Police Department where she gave a statement to Detective Mosby. Additional facts will be developed as they are relevant to the points raised.

As his first point of error defendant contends the trial court erred in denying defendant's motion to admit expert testimony in the field of eyewitness identification. By pretrial motion defendant sought the admission of the testimony of Dr. Lawrence Wrightsman, Chairman of the Department of Psychology at Kansas University, who was described by counsel as "an expert in the field of eyewitness identification." The expert testimony was offered to show the jury reasons why an identification such as the one in the present case could be unreliable. Defendant takes the position that juries place too much weight on identification testimony and that expert testimony was necessary to show that scientific studies have drawn into question the reliability of such testimony under facts similar to this case. Defendant makes no claim that the victim suffered from any specific organic or emotional disability that would have affected the reliability of her identification of defendant. The trial court rejected the proposed evidence.

The admissibility of expert opinion testimony is controlled by K.S.A. 60-456(b), which reads as follows:

"If the witness is testifying as an expert, testimony of the witness in the form of

opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) *within the scope of the special knowledge, skill, experience or training possessed by the witness."* Emphasis supplied.

Under the statute we have repeatedly held that the qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial court. *Spraker v. Lankin,* 218 Kan. 609, 613, 545 P.2d 352 (1976); *In re Estate of Minney,* 216 Kan. 178, 182, 531 P.2d 52 (1975); *Hubbard v. Havlik,* 213 Kan. 594, 607, 518 P.2d 352 (1974).

The basis for the admission of expert testimony is the need to assist the jury under the facts of the particular case. *Lollis v. Superior Sales Co.,* 224 Kan. 251, 580 P.2d 423 (1978). Concerning limitations on the admissibility of the testimony of an expert witness, we held in *Massoni v. State Highway Commission,* 214 Kan. 844, Syl. ¶ 3, 522 P.2d 973 (1974):

"Opinion testimony is not without limitations and although an expert witness may be permitted to give an opinion bearing on the ultimate issue he may do so only insofar as the opinion will aid the jury in the interpretation of technical facts or when it will assist the jury in understanding the material in evidence."

The question presented in the instant case is whether the proposed expert testimony would have materially aided the jury or whether questions relating to the reliability of the victim's eyewitness identification testimony are within the normal experience and qualifications of the jury. While the precise question here has not been before this court we have considered, generally, the limitation of expert testimony with respect to the credibility of witnesses. We held in *Smith v. Estate of Hall,* 215 Kan. 262, Syl. ¶ 3, 524 P.2d 684 (1974):

"An expert's opinion in a proper case is admissible up to the point where an expression of opinion would require him to pass upon the credibility of witnesses or the weight of disputed evidence."

The identical question was recently considered by the 10th Circuit Court of Appeals in *United States v. Brown,* 540 F.2d 1048 (10th Cir. 1976), *cert. denied* 429 U.S. 1100 (1977). The case involved the eyewitness identification of a defendant in the robbery of a savings and loan office. The proffer, as in the instant case, was the testimony of a professor of psychology who was described as an expert in the field of eyewitness identification. In affirming the trial court's exclusion of the testimony the court

relied on the proposition that expert testimony, while not limited to matters of science, art or skill, cannot invade the field of common knowledge, experience and education of laymen and that it cannot usurp the function of the jury if such testimony touches the very issue before the jury. A similar result is reached in other published opinions. See *United States v. Watson,* 587 F.2d 365 (7th Cir. 1978); *United States v. Amaral,* 488 F.2d 1148 (9th Cir. 1973); *Jones v. State,* 232 Ga. 762, 208 S.E.2d 850 (1974). Defendant has been unable to cite a published opinion which endorses the use of expert identification opinion evidence in a case such as this.

We find no error in the trial court's refusal to admit the testimony in question under the facts and circumstances shown.

In his second point defendant claims the trial court erred in denying defendant's pretrial motion to suppress testimony relating to a precharge photographic lineup. Defendant argues the lineup was impermissibly suggestive and conducive to misidentification.

The identification in question took place on August 7, 1978. Detective Mosby asked the victim to view certain photos. There were two stacks of photos, five black and white, and six colored. Detective Mosby shuffled the black and white photos first and handed them to the victim. She looked through the photos momentarily and then identified one. The photograph was of the defendant. The victim was then handed the six colored photos. She once again identified defendant. No indication was made to the victim that she had picked the right man after she looked at the black and white photos.

Defendant's principal argument that this photo lineup was impermissibly suggestive is based on the fact defendant's photograph is the only one which appeared in both sets. Defendant notes the statement by the United States Supreme Court in *Simmons v. United States,* 390 U.S. 377, 383, 19 L.Ed.2d 1247, 88 S.Ct. 967 (1968), that the danger of misidentification is increased if the picture of one person recurs in several photographic displays. The trial court concluded that the photographic lineup may have been suggestive for this reason, but in view of the strength of the identification and the totality of the circumstances, the court determined that there was not a substantial likelihood of irreparable misidentification and the testimony was admitted at trial.

Lineups that are unnecessarily suggestive or conducive to irreparable mistaken identification are forbidden by the due process clause of the federal constitution. *State v. Clark,* 218 Kan. 726, 544 P.2d 1372, *cert. denied* 426 U.S. 939 (1976); *State v. Colin,* 214 Kan. 193, 519 P.2d 629 (1974). However, we do not find the procedure followed here to have been unnecessarily suggestive. This is not a case where a suspect's picture is placed in one photographic lineup, not identified, and then the same picture placed once or twice again in another lineup as in *Simmons v. United States,* 390 U.S. at 383. Here the victim identified defendant's picture in the first group of photographs. Double-checking by exhibiting the second group to the victim was not suggestive but served to protect against misidentification. Even if the lineup procedure here may have been unnecessarily suggestive, as suggested by the trial court, the victim's testimony disclosed a high degree of reliability in the identification. Her testimony revealed a high degree of attention during the critical time; she was with defendant for at least 30 minutes and for a considerable part of the time was in face-to-face confrontation, she remembered conversation and actions that took place, and she was able to describe the defendant and to give an accurate description of the clothes he was wearing. Her testimony fully meets the tests for the likelihood of misidentification set out in *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972). See *State v. Nesmith,* 220 Kan. 146, 147, 551 P.2d 896 (1976). We find no error in the trial court's ruling in this regard.

Defendant next contends the trial court erred in admitting evidence relating to pubic hairs obtained from one Charlene Chambers, a girlfriend of appellant. As previously mentioned a "rape kit" was taken of the victim shortly after the assault. When the victim's pubic hair was combed a Negroid pubic hair was found. A forensic chemist for the Kansas Bureau of Identification determined that the hair did not come from defendant. In an attempt to determine where the hair had come from, the State obtained a pubic hair sample from Charlene Chambers. The forensic chemist compared this sample with the hair found in the "rape kit" examination and concluded that there were both similarities and dissimilarities, such that Charlene Chambers could not be excluded as a source of the hair.

It was the prosecution's purpose in offering the evidence to show that the hair found in the examination might have been transferred from Ms. Chambers to defendant and then from defendant to the victim. Ms. Chambers testified at trial that she had lived with defendant and had been sexually intimate with him during a period from October, 1977, through August, 1978. Ms. Chambers testified that she did not recall having sexual relations with appellant at all during the months of June or July of 1978; that she had been sick during this period. However, she would not rule out the possibility she had had sexual relations with appellant during this time. The only period she was able to positively exclude was during her hospitalization from July 25 to September 19. Defendant contends Ms. Chamber's testimony and the evidence of the sample taken from her should have been excluded as irrelevant.

Relevant evidence is defined in K.S.A. 60-401(*b*) as "evidence having any tendency in reason to prove any material fact." In discussing relevancy we have frequently said that to be admissible evidence must be confined to the issues but it need not bear directly upon them. To render evidence of collateral facts competent there must be some natural or logical connection between them and the inference or result they are designed to establish. *State v. Brown*, 217 Kan. 595, 538 P.2d 631 (1975); *State v. Fagan*, 213 Kan. 587, 518 P.2d 552 (1973).

In this case the fact the disputed evidence was offered to prove was material. There was an unidentified pubic hair found after the rape. It did not match that of defendant. It was incumbent upon the State to attempt to establish where it came from. Since it could have come from Ms. Chambers, who was known to have had sexual intercourse with defendant, there was linkage, though tenuous, with the crime sought to be proved. Although the probative value of the evidence offered may not have been substantial, it did have some tendency to prove a disputed material fact; beyond this the decision whether or not to admit it was for the trial court. It is a venerable rule that the admission or exclusion of evidence is within the sound discretion of the trial court, subject to exclusionary rules (*State v. Nemechek*, 223 Kan. 766, 576 P.2d 682 [1978]; *State v. Baker*, 219 Kan. 854, 858, 549 P.2d 911 [1976]).

Finally defendant claims the trial court erred in not granting

defendant's motion to dismiss at the close of the State's case due to the insufficiency of the evidence. The defendant is really complaining about the fact the jury did not accept his testimony. There was substantial evidence pointing to the guilt of defendant. There was a close prior description which fit defendant and a positive in-court identification given by the victim who also gave an accurate, detailed description of the automobile her assailant was driving. A knife found on defendant at the time of his arrest was identified by the victim as looking very much like the one used in the attack. The "rape kit" examination positively disclosed that sexual intercourse had taken place.

There was ample evidence to lead a rational trier of fact to find guilt beyond a reasonable doubt. See *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979).

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.