No. 50,931

STATE OF KANSAS, *Appellee,* v. JAMES E. BAKER, *Appellant.*

(607 P.2d 61)

Opinion filed March 1, 1980.

*John C. Amorosa,* of Kansas City, argued the cause and was on the brief for the appellant.

*Philip L. Sieve,* chief deputy district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict which found James E. Baker (defendant-appellant) guilty of felony murder (K.S.A. 21-3401). The appellant asserts several errors on appeal.

This is the second appeal by the appellant, whose original conviction of felony murder was reversed by this court in *State v. Baker,* 224 Kan. 474, 580 P.2d 90 (1978). A second trial of the appellant resulted in a hung jury and mistrial. The felony-murder conviction now on appeal is the product of the third trial.

The facts of this crime were briefly summarized in our prior decision, as follows:

"The victim, Steve Burdolski, was discovered behind his desk in the Novotney Liquor Store in Kansas City, Kansas. He had been shot in the chest and was dead at the scene. The discovery was made at 9:45 p.m. on February 15, 1977. A short time prior to the discovery of the body, Linda Edwards had parked her car near this liquor store, preparatory to obtaining groceries in a nearby store. Before leaving her car she saw another car drive up and park to her left. The occupants got out of their car. The man on the passenger's side walked past Mrs. Edwards as he headed in the direction of the liquor store. The man was identified by her at the trial as the appellant.

"As Mrs. Edwards went into the grocery store she passed the victim, Steve Burdolski, as he was leaving to return to work. Shortly thereafter a third party came into the grocery store and advised those present, including Mrs. Edwards, that Mr. Burdolski had suffered a heart attack while at work in the liquor store. An ambulance was called. Some time later Mrs. Edwards learned that, instead of suffering a heart attack, Mr. Burdolski had been shot. She notified the police as to what she had witnessed.

"The murder weapon was not found and no ballistics evidence was introduced at the trial. There was no fingerprint evidence introduced and the appellant made no statement or admission to the police. The evidence pointing to appellant's participation in the crime largely consisted of his identification by Mrs. Edwards, together with the testimony of appellant's former girl friend, Janice Hardenett.

"At the preliminary hearing Ms. Hardenett testified she talked with the appellant the day after the man was killed in the liquor store, and the appellant told her he robbed the liquor store and shot the man. She further testified appellant told her he shot the man because the man gave him some static. Janice Hardenett was 16 years old. On cross-examination she retracted her previous testimony. After a brief recess the state rehabilitated its witness and Ms. Hardenett iterated her previous story concerning what the appellant had told her. She testified that she changed her story on cross-examination because she was afraid of the appellant." 224 Kan. at 474-75.

We reversed the appellant's first conviction because "the cumulative effect of errors in admitting hearsay evidence and in unduly restricting evidence bearing on the credibility of the key prosecution witness resulted in denying the defendant-appellant a fair trial." 224 Kan. at 474.

The first two points raised by the appellant are closely related. He contends the trial court erred in denying his motion to suppress evidence of a lineup identification by Mrs. Edwards. The appellant argues that his presence in the lineup as the only person with a distinctive physical feature—a forehead scar—rendered the lineup so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See *State v. Hall,* 220 Kan. 712, 717, 556 P.2d 413 (1976); *State v. Nesmith,* 220 Kan. 146, 551 P.2d 896 (1976); *State v. Deffenbaugh,* 217 Kan. 469, 536 P.2d 1030 (1975). The appellant's

second point is that the trial court erred in permitting Mrs. Edwards to make an in-court identification which was tainted by the impermissibly suggestive lineup.

In *State v. Hall,* 220 Kan. at 717, we discussed a motion to suppress lineup identification evidence and stated:

"Some factors to be considered in evaluating the likelihood of misidentification at a line-up are (1) the opportunity of the witness to view the accused at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the accused, (4) the level of certainty displayed by the witness at the confrontation, and (5) the length of time between the crime and confrontation. See *State v. Bey,* 217 Kan. 251, 535 P.2d 881."

On viewing the totality of the circumstances we find nothing unnecessarily suggestive or conducive to irreparable mistaken identification. The lineup was fairly composed; the appellant's forehead scar was barely discernible. Mrs. Edwards was not relying solely on the presence of a forehead scar to identify the suspect she had described. At the suppression hearing the trial court fully analyzed the circumstances and composition of the lineup and properly ruled the identification was reliable and admissible. The appellant had ample opportunity at trial to attack the credibility of the lineup identification.

This court has held that in-court identifications may be capable of standing on their own even though preceded by deficient pretrial confrontations. See *State v. Perales,* 220 Kan. 777, 780, 556 P.2d 172 (1976); *State v. Bey,* 217 Kan. 251, 259, 535 P.2d 881 (1975); *State v. Calvert,* 211 Kan. 174, 178, 505 P.2d 1110 (1973). The courtroom identification by Mrs. Edwards was not tainted by the lineup identification. Mrs. Edwards testified her courtroom identification was based upon recollection of the facial charac-teristics and physical features of the man she observed the night of the crime. Mrs. Edwards testified she got a good look at the appellant the night of the crime, and she positively identified him in the courtroom. The trial court did not err in overruling the motion to suppress Mrs. Edwards' lineup and courtroom iden-tifications.

The appellant contends the trial court erred in refusing to allow him to take a polygraph examination. This issue was held to be without merit in the first appeal by the appellant. See *State v. Baker,* 224 Kan. at 478. The appellant provides no justification to alter our prior holding.

The appellant next contends the trial court erred in admitting

into evidence a transcript of the prior testimony of Linda Rainey. The primary foundation of the State's case was the testimony of the appellant's former girl friend, Janice Hardenett. Ms. Hardenett testified that the appellant had told her that he killed an old white man who had given him static in a liquor store on Parallel Road. At the appellant's second trial, the State reinforced Ms. Hardenett's testimony with testimony of Linda Rainey. Ms. Rainey testified that Janice Hardenett had previously told her of the appellant's confession to the crime. At the appellant's third trial, Linda Rainey was unavailable as a witness. Over the appellant's objection, the State was permitted to read the transcript testimony of Linda Rainey from the second trial. The appellant claims this was error because the testimony was multiple hearsay, and he was denied the right to confront the witness.

On the first appeal we held Janice Hardenett's testimony concerning the appellant's confession was admissible under K.S.A. 60-460(*f*). See *State v. Baker,* 224 Kan. at 476. At the second trial, Linda Rainey's testimony about Janice Hardenett's statements to her was admissible; it was founded upon the provisions of K.S.A. 60-463, entitled "Multiple Hearsay," as that statute relates to the hearsay exception in K.S.A. 60-460(*a*). At the second trial Ms. Rainey appeared and testified and the appellant was given full opportunity to cross-examine her. See *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012 (1977). In the instant case, the trial court properly admitted the transcript of Linda Rainey's prior testimony in the second trial under K.S.A. 60-460(*c*)(2). Ms. Rainey was unavailable as a witness; and after a hearing the trial court found the State had exercised due diligence in its attempt to secure the personal presence of Ms. Rainey. See *State v. Steward,* 219 Kan. 256, 264-5, 547 P.2d 773 (1976). Ms. Rainey's testimony was given in a former trial of the same action. The testimony of Ms. Rainey was multiple hearsay (K.S.A. 60-463), but nevertheless admissible. See *State v. Childers,* 222 Kan. 32, 46, 563 P.2d 999 (1977).

The appellant was not denied the right to confront the witness face-to-face, because the appellant was permitted full cross-examination of Ms. Rainey at the second trial. See *State v. Henderson,* 226 Kan. 726, 603 P.2d 613 (1979); *State v. Alderdice,* 221 Kan. 684, Syl. ¶ 1, 561 P.2d 845 (1977). The appellant's claim that new evidence brought out at the third trial linked Ms. Rainey, Ms.

Hardenett, and another person in a plot to get the reward money is without merit. This "evidence" was merely a passing reference by James Nelson, the appellant's cousin, to the fact that Ms. Hardenett knew a reward was available. There was no "new evidence" at the third trial that Ms. Hardenett was engaged in a conspiracy to collect a reward. The appellant's counsel extensively cross-examined Janice Hardenett at both the second and third trials because she had made inconsistent statements. The appellant had the opportunity to question Ms. Hardenett about this so-called "conspiracy," but chose not to do so.

The appellant raises three points in regard to the trial court's handling of the jury. The appellant contends the trial court should have sequestered the jury, that the court erred in failing to set aside the verdict due to juror misconduct, and that the court erred in making certain remarks to the jury.

The trial court instructed the jury on Thursday, February 8, 1979. That afternoon, before the jury was dismissed for the day, the appellant requested the court to sequester the jury. As justification for sequestering the jury, the appellant cited the serious nature of the crime charged, and the existence of newspaper articles about the trial. The appellant reminded the trial court that the first conviction was overturned, in part, because of juror misconduct in reading newspapers. The trial court denied the request, admonished the jury not to read any newspaper articles about the trial, and sent them home. On Friday evening the jury had not yet reached a verdict. The appellant requested the court to order the jury to return on Saturday morning or to sequester the jury. He informed the court of a prejudicial newspaper article in the prior day's newspaper. The court refused to sequester the jury or order their return on Saturday. The judge stated that a three-day weekend was ahead, and he saw "no reason to ruin their weekend especially it being a holiday for some." The court ordered the jury to return on Tuesday, February 13, and again admonished them to avoid reading or listening to news accounts of the trial.

The jury returned on Tuesday morning. After deliberating most of the morning they informed the court they were deadlocked. The court then made the following remarks to the jury:

"Have a seat for a moment. I just want to say one thing. As some of you may have guessed this is the third time around for this case. The first case was sent

back by the Supreme Court. The second case the jury could not agree. I think as a benefit to everybody, the State and the defense, if you all could arrive at some verdict. I'll ask you to take one more vote and I'll discharge you, if you would."

Shortly thereafter, the jury returned with a guilty verdict.

On February 26, 1979, the appellant entered a motion for judgment of acquittal and declaration of a mistrial. The appellant asserted several trial errors and insufficiency of the evidence. The appellant specifically claimed the trial court's remarks to the jury on February 13 were prejudicial. The trial court denied the appellant's motions and sentenced the appellant to life imprisonment.

On May 4, 1979, the appellant appeared again before the court, arguing for a new trial. The appellant presented an affidavit from one of the jurors. The affidavit stated *inter alia* that on February 8, the juror had read newspaper articles which reported the appellant's prior conviction and reversal on a technicality, and the fact a second trial ended in a hung jury. The juror also stated that newspaper articles about the trial were read and discussed by several jurors. The trial court denied the motion for a new trial.

The State argues the juror misconduct was not prejudicial because on Tuesday morning the trial judge told the jury about the prior trials. In addition, the jurors already knew there had been at least two prior trials, because of references by witnesses and counsel throughout the trial.

"[I]t has been regarded as ordinarily proper for a trial judge, stressing the desirability and importance of agreement, to disclose that the case had been tried previously." 76 Am. Jur. 2d, Trial § 1064, p. 59; see Annot., 38 A.L.R.3d 1281, 1322, § 12(a). Whenever the statements or instructions of a court to a jury are plainly coercive, or tend to be coercive and as such are prejudicial, a new trial shall be granted for abuse of discretion by the court. *Coleman v. Patti Construction Co.,* 182 Kan. 53, Syl. ¶ 5, 318 P.2d 1028 (1957); see also *State v. Anicker,* 217 Kan. 314, Syl. ¶ 3, 536 P.2d 1355 (1975). There was no error in the trial court's remarks to the jury. The court was correct that most of the jurors had probably guessed that this was the third trial. The judge's remarks were not coercive, and they were not prejudicial.

We have stated that a juror's reading of newspaper articles pertaining to the trial is not grounds for reversal, new trial, or mistrial unless the articles are of such a character that they might

have resulted in prejudice to the losing party. *Roy v. State,* 213 Kan. 30, 32, 514 P.2d 832 (1973). In *State v. McCorgary,* 224 Kan. 677, 687, 585 P.2d 1024 (1978), we stated:

"K.S.A. 22-3423(*c*) covers grounds for a possible mistrial in this case. This subsection provides: 'Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution; . . .' The granting of a mistrial on this ground lies within the discretion of the trial court. *State v. Jakeway,* 221 Kan. 142, 148, 558 P.2d 113 (1976). A mistrial will not be declared under K.S.A. 22-3423(*c*) unless the rights of either the defendant or the state have been substantially prejudiced. *State v. Rhodes,* 219 Kan. 281, 283, 546 P.2d 1396 (1976)."

The juror misconduct was not prejudicial. The newspaper articles contained the same information provided by the trial judge's remarks.

The trial court did not commit error by failing to sequester the jury because the appellant's rights were not prejudiced. The decision to sequester a jury lies within the trial court's power of discretion. K.S.A. 22-3420(1). In the absence of a showing there has been an abuse of discretion which has prejudiced defendant's substantial rights the ruling of the trial court will not be disturbed. *State v. Jones,* 218 Kan. 720, 723, 545 P.2d 323 (1976). See *State v. Wilson,* 188 Kan. 67, 75, 360 P.2d 1092 (1961), and cases cited therein. See also Annot., 72 A.L.R.3d 248.

Finally, the appellant contends the evidence is insufficient to support a verdict. In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. Peoples,* 227 Kan. 127, 605 P.2d 135 (1980); *State v. McGhee,* 226 Kan. 698, 602 P.2d 1339 (1979); *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979). In the first appeal, *State v. Baker,* 224 Kan. at 475, this court held the evidence was close, but sufficient, stating:

"The evidence to support the conviction in this case is not strong. However, appellant was identified as being in the vicinity just prior to the murder and this together with the testimony of Ms. Hardenett was sufficient to support the verdict . . . ."

We have reexamined the record on this appeal and find the appellant's contention to be without merit. There was sufficient

evidence for a rational factfinder to find the appellant guilty beyond a reasonable doubt.

The judgment of the lower court is affirmed.