No. 50,897

STATE OF KANSAS, *Appellee*, v. TERRY L. PONDS, *Appellant.*

(608 P.2d 946)

Opinion filed April 5, 1980.

*Stephen M. Joseph,* of Glover, Joseph & Bergman, of Wichita, argued the cause and was on the brief for the appellant.

*David Moses,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Neal Brady,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action from a jury verdict which found Terry L. Ponds (defendant-appellant) guilty of aggravated robbery (K.S.A. 21-3427). The appellant contends the trial court erred in refusing to suppress identification testimony, and in refusing to declare a mistrial after the prosecutor's remarks in closing argument.

About 12:30 a.m. on Saturday, March 11, 1978, Dana Winters

and Becky Bradner left a private club in Wichita and walked to Ms. Winters' car in the club's parking lot. As the women walked, Ms. Winters noticed a man standing against the club building; he was holding a white cloth over his face. From a distance of several yards Ms. Winters asked the man if he was sick; he did not respond. After the women had entered the car, the same man appeared outside the driver's side window brandishing a handgun. The man demanded and received the women's purses and fled. The victims returned to the club where an employee called the police. Ms. Winters gave the police a description of the robber. She described the robber as a Mexican male with curly hair, weighing 150-170 pounds, 5′7″ to 5′8″ tall, 25-27 years old. She stated that he was wearing an "apple" style cap and a gray jumpsuit, that he had displayed an "automatic," and that he had partially masked his face with a white dishcloth.

About 26 hours later, the appellant and a man named Prentice Williams were arrested in the appellant's car in relation to another incident. Three items were lawfully seized from beneath the passenger's seat of the appellant's car: a white towel, a .32-caliber revolver, and a blue apple cap.

A few days after the robbery, Detective Louis Brown conducted a photographic lineup before Ms. Winters. He had previously called and told Ms. Winters the police had arrested the man believed to be the robber. Detective Brown went to Ms. Winters' home and placed seven photographs on the floor in front of her. Two photos of the appellant were included; one photo was taken in 1971, the other in 1978. Detective Brown asked Ms. Winters, "Which one of these men is the one that robbed you? Can you identify any of them as being the one that robbed you?" Ms. Winters then chose a photograph of the appellant.

The appellant first contends the trial court erred in refusing to suppress Ms. Winters' photo identification and subsequent courtroom identification. The appellant argues that the police procedures, especially comments by Detective Brown, rendered the photo identification impermissibly suggestive, creating a substantial likelihood of misidentification.

Prior to trial a hearing was held on the appellant's motion to suppress. The appellant sought to suppress testimony about the photographic lineup and testimony about Ms. Winters' identification of him at the preliminary hearing. At the suppression

hearing Ms. Winters testified that on the day of the preliminary hearing she saw the appellant sitting on the floor by the elevator in the courthouse. She testified she recognized the appellant as the robber. Later, but before the preliminary hearing, Detective Brown was talking with Ms. Winters and indicated to her that the man by the elevator was the robber. While testifying at the suppression hearing, Ms. Winters stated she picked the appellant from the photo lineup and again at the preliminary hearing because of his distinctive eyes and hair. However, she further testified she had no specific recollection of what the appellant looked like without relying on the photographs. The trial court ruled the photo identification was admissible, and refused to suppress any future courtroom identifications. The trial court suppressed the preliminary hearing identification because Ms. Winters had no specific recollection.

We are not convinced that the trial court was correct in suppressing the preliminary hearing identification. However, the suppression is no longer material. On cross-examination of Ms. Winters at trial the appellant's counsel introduced evidence of the preliminary hearing identification for purposes of testing Ms. Winters' credibility. Ms. Winters contradicted her suppression hearing testimony and declared she had a specific recollection of the appellant's facial features.

We have recognized the potential for impermissibly suggestive pretrial identifications. In each case, the totality of circumstances is analyzed to determine whether an identification is so impermissibly suggestive that it gives rise to a very substantial likelihood of irreparable misidentification. See *State v. Baker,* 227 Kan. 377, 607 P.2d 61 (1980); *State v. Reed,* 226 Kan. 519, 601 P.2d 1125 (1979); *State v. Nesmith,* 220 Kan. 146, 551 P.2d 896 (1976).

The appellant points to several circumstances which he claims render the photo identification impermissibly suggestive. The seven photographs displayed to Ms. Winters are challenged as unfair. The appellant also argues that Detective Brown's comments to Ms. Winters were suggestive. After Ms. Winters selected the appellant, Detective Brown stated that she chose the same man the police suspected and that he had been charged with several robberies. The suppressed identification at the preliminary hearing is also asserted as a suggestive influence.

We reviewed each of the alleged suggestive circumstances and

found no fatally suggestive influence. The seven photographs depict a suitably similar group of individuals. There is no gross disparity or distinctive indication of the appellant's photo. With the exception of one photo, the seven photos used in the lineup depicted individuals who generally fit within Ms. Winters' description of the robber.

Detective Brown's comments to Ms. Winters prior to the photo identification were not impermissibly suggestive. There is nothing unusual or suggestive in a statement that the police have arrested a suspect or in the request to pick "the one that robbed you." Detective Brown's confirmation that Ms. Winters' choice was also the police suspect was not suggestive since it *followed* the photo identification. By the same reasoning, the suppressed preliminary hearing identification was not a suggestive influence on the photo identification; it came after the photo identification.

The appellant next contends the courtroom identification should have been suppressed. We have already determined the photo identification was not impermissibly suggestive, hence the courtroom identification was not tainted by the photo identification. However, the circumstances surrounding the suppressed preliminary hearing identification are also claimed to have influenced the later courtroom identification.

This court has held that in-court identifications may be capable of standing on their own even though preceded by deficient pretrial confrontations. *State v. Baker,* 227 Kan. at 379, and cases cited therein. "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite,* 432 U.S. 98, 114, 53 L.Ed.2d 140, 97 S.Ct. 2243 (1977). The oft-quoted standards of *Neil v. Biggers,* 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375 (1972), are used to test the reliability of the courtroom identification. Those factors are (1) the opportunity of the witness to view the accused at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the accused, (4) the level of certainty displayed by the witness at the confrontation, and (5) the length of time between the crime and confrontation. See *Neil v. Biggers,* 409 U.S. at 199-200; *State v. Baker,* 227 Kan. at 379; *State v. Nesmith,* 220 Kan. at 148.

On viewing the totality of the circumstances we are satisfied the courtroom identification was admissible. Ms. Winters had a brief

but adequate opportunity to form a strong mental image of the robber. She observed the robber standing against the building and then beside her car. She was able to observe his overall appearance, as well as the visible facial features of eyes, bridge of the nose, forehead and hair. As the victim of a gunpoint robbery her attention was focused on her assailant. The original description Ms. Winters provided to the police was in material respects in accord with the appellant's physical features. Ms. Winters told the police her assailant used a pistol, wore an apple cap, and used a white dishcloth for a mask; those three items were lawfully seized from the appellant's car within 26 hours of the robbery. The suppressed preliminary hearing identification did not taint the later courtroom identification. At trial Ms. Winters recanted her testimony at the suppression hearing. Ms. Winters testified her courtroom identification was based on both her memory of the robber's visible facial features and reliance on her selection of the appellant from the photo lineup. Minor discrepancies in Ms. Winters' testimony were properly matters left for the jury's consideration.

The appellant's final claim of error is the trial court's refusal to declare a mistrial after the prosecutor allegedly made an improper comment on the appellant's failure to testify.

In concluding his closing argument at trial the prosecutor made the following remarks:

"I would like to thank you for your time and for your consideration and leave you with one final thought. We spoke on the selection that there are many times when only two people really know what happened. In this case I submit to you that those two people are Terry Ponds and Dana Winters; and Dana Winters knows that the other person was Terry Ponds. Thank you."

Appellant's counsel approached the bench, objected to the remarks, and moved for a mistrial. The trial court sustained the objection, refused the mistrial, and admonished the jury to disregard the remark.

We have recently summarized the legal principles governing such error in *State v. Henderson*, 226 Kan. 726, 735-36, 603 P.2d 613 (1979), stating:

"Comment by the prosecutor upon defendant's failure to testify violates the defendant's constitutional right against self-incrimination. *Griffin v. California*, 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229 (1965); *State v. Reeves*, 224 Kan. 90, 93, 577 P.2d 1175 (1978). Kansas has codified the *Griffin* rule in K.S.A. 60-439, which prohibits comment by counsel and the court upon a defendant's privileged

failure to testify. Comment is not, however, a per se violation requiring reversal. Only error failing to meet the federal standard of harmless error, defined as proof beyond a reasonable doubt that the error did not contribute to the verdict, requires reversal. *Chapman v. California,* 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824 (1967); *State v. Reeves,* 224 Kan. at 93.

"We noted, in the *Reeves* opinion, that the right to complain of prosecutorial mention of a defendant's failure to testify is generally precluded when the error is invited or provoked by the defendant or his counsel. Such is not the case here; the argument was not invited.

"We must, in determining whether the comment was harmless, take into consideration the nature and extent of the comment, in comparison with the strength of the evidence of the defendant's guilt. See Annot., Failure to Testify— Comment On, 24 A.L.R.3d 1093, 1109; *State v. Rhodes,* 110 Ariz. 237, 517 P.2d 507 (1973); *People v. Garrison,* 252 Cal. App. 2d 511, 60 Cal. Rptr. 596 (1967).

"The Tenth Circuit finds that error exists where 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955). In such a case it finds reversible error despite failure to make a contemporaneous objection. *Doty v. United States,* 416 F.2d 887 (10th Cir. 1968.)"

Here it is apparent the prosecutor's comment could be characterized as improper. Appellant's counsel characterized the prosecutor's remarks as a "veiled comment" on the failure to testify. The trial court stated the comment was "close enough that I'm going to admonish them." The trial court then instructed the jury "to disregard Mr. Weilert's final statement as to the Defendant being one of the persons who knows what happened in the parking lot that night."

Applying the analysis outlined in *State v. Henderson,* 226 Kan. at 736, no reversible error is found. The prosecutor's comment was harmless when the "veiled" nature and brief extent of the comment is compared with the ample evidence of the appellant's guilt. Nor can we say the comment would "naturally and necessarily" be taken as emphasizing the appellant's refusal to testify. Any slight prejudice was remedied by the trial court's admonition. See *State v. Carpenter,* 215 Kan. 573, 576, 527 P.2d 1333 (1974).

The judgment of the lower court is affirmed.