No. 45,491

STATE OF KANSAS, *Appellee,* v. RAY EMERSON MEEKS, *Appellant.*

(469 P. 2d 302)

Opinion filed May 9, 1970.

*Russell Shultz,* of Wichita, argued the cause and was on the brief for the appellant.

*Reese C. Jones,* Deputy County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, and *Keith Sanborn,* County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the defendant in a criminal action from a conviction of robbery in the first degree pursuant to K. S. A. 21-527.

Various trial errors are asserted on appeal.

The evidence disclosed that Ray Emerson Meeks (defendant-appellant) robbed Douglas McNaught, the attendant at a Derby

Filling station in Wichita, Kansas, located at 2014 East Central Street. At approximately 7 a. m. on December 3, 1967, the appellant arrived at the station in his automobile. He requested a scraper for his windshield which McNaught gave him. When McNaught went to wait on other cars the appellant left. Shortly thereafter, the appellant returned and came into the station where the appellant at gunpoint demanded money from McNaught. He was given approximately $115 in cash. A customer then arrived and both men went out to wait on the car. At this time the appellant had the gun in his pocket. After waiting on the customer they went back into the station where the appellant searched for a gun that he thought was located in the station. The appellant contemplated taking the attendant's automobile, the operation of which the attendant explained to the appellant, but he decided not to because he would be picked up too easily in it. The appellant also instructed the attendant not to identify him if he saw him again. The appellant then left on foot.

The police after notification took a report from the attendant, and at approximately 11 a. m. spotted a car of the description given them located outside a residence at 707 North Piatt in Wichita. Shortly thereafter a man matching the description the attendant had given emerged from the residence at 707 North Piatt. He was accosted by Officer Malone, and while sitting in the officer's car the appellant was advised of his constitutional rights. The appellant indicated he understood his rights and that he would talk with the officer, but denied any knowledge of the robbery. Thereafter W. T. Shackelford, a detective in the Wichita police department, arrived on the scene and took the appellant in his automobile. Shackelford also advised the appellant of his rights before questioning him. The police officers then took the appellant to the scene of the robbery where the attendant identified the appellant as the one who committed the robbery. As they approached the police station the appellant stated he wished to talk to the officers, and he subsequently admitted the robbery. He then executed a waiver of search and two detectives returned to the appellant's residence with the appellant.

At the residence the appellant let the officers in the back door and took them to the basement, where he showed the officers a trunk which contained the money taken in the robbery. He also showed them the gun used in the robbery. It was recovered from the dresser drawer in the basement at the residence.

The appellant contends the trial court erred in admitting into evidence his conversations, statements, confession and admissions.

It is argued the foregoing evidence was obtained without a sufficient warning having been given to the appellant of his rights, and that such evidence was therefore inadmissible and could not be used against him. Objections asserted by the appellant concerning the admission of this evidence at the trial were all overruled.

Police Officer Malone testified he was the officer responding to the call concerning the robbery in question, and took from his billfold a card containing the *Miranda* warning which he read to the appellant as follows:

"You have the right to remain silent, anything you say can and will be used against you in a court of law. You have a right to talk to a lawyer and have him present with you while you are being questioned. If you cannot hire a lawyer the Court will appoint one for you. Do you understand each of these rights I have explained to you? Having these rights in mind do you wish to talk to us now?"

Officer Malone said the appellant replied that he understood his rights.

Detective Shackelford testified he met the appellant while in the custody of Officer Malone and took custody of him; that he read from a card in his pocket verbatim the *Miranda* warning, and after each statement contained therein he asked the appellant if he understood, to which the appellant responded in the affirmative.

Detective Shackelford said as he and Officer Malone drove the appellant to the police station the appellant said he would tell them all about it; the appellant said, "You have been nice."

The trial judge found the full disclosure made by the appellant was voluntary, and the exhibits introduced in evidence were all voluntarily made available to the officers investigating the crime, after the appellant had properly been advised of his constitutional rights.

Counsel for the appellant argues the warning to the appellant—that an attorney would be appointed by the court if he could not hire one—failed to disclose to the appellant that he was entitled to the appointment of counsel prior to questioning. He argues the obvious conclusion taken from the warning would be that, "you're not in court now but that if we ever get to court the court will appoint you a lawyer since you cannot afford one yourself." He relies on *Gilpin v. United States*, 415 F. 2d 638 (5th Cir. 1969). There the warning given advised the defendant that an attorney would be

appointed for him when he went to court, but not before interrogation, and this was held to be insufficient under *Miranda.*

The warning given by the officers here complied literally with the decision in *Miranda.* We think the construction placed upon the warning here given by counsel for the appellant is unwarranted, and his point lacks merit.

In addition to advising one suspected of crime of his rights, the state has the burden to show that the suspect understood those rights and that he knowingly and intentionally waived his privilege against self-incrimination.

The record in this case discloses the state sustained the burden cast upon it to the satisfaction of the trial court, and the evidence sustains the trial court's finding and conclusion.

Before any statements were taken from the appellant he was warned twice of his rights strictly in accordance with the decision in *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The record here discloses none of the evils of custodial interrogation that Miranda delineated. The appellant was not subjected to long hours of interrogation or repeated interrogation sessions. No pressure or threats were used against him. The testimony of Detective Shackelford discloses the appellant was in full possession of his faculties, knew what his rights were, and voluntarily waived those rights.

It is next contended the trial court erred in limiting the cross-examination of Detective Shackelford by counsel for the appellant.

On cross-examination Detective Shackelford testified that on the way to the police station from the home of the appellant shortly after his arrest, they stopped by the Derby filling station where the robbery took place and permitted McNaught, the victim of the robbery, to observe the appellant. Counsel for the appellant thereupon attempted to cross-examine Detective Shackelford as to the method of identification attempted at that time, but the court refused to permit such examination. It is argued this action of exhibiting the appellant to the only identification witness available at a time, when he was in the custody of two police officers, in their police vehicle, was clearly a violation of the due process clause, and was the type particularly proscribed by *United States v. Wade,* 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926; and *Gilbert v. California,* 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951.

In both *Gilbert* and *Wade* the appellants were confronted in post-

indictment lineups; both had counsel at the time they were placed in the lineup for identification purposes, but the lineup was conducted without notice to and in the absence of the accused's appointed counsel. In *Wade* the lineup was held some eight months after the crime had occurred, and in *Gilbert* the lineup occurred over two and one-half months after the crime was perpetrated and one month after the arrest.

Here we are confronted with a different situation. This is an on-the-scene identification of the only suspect within four hours after the offense was committed. Our research has disclosed no United States Supreme Court decisions on the precise point. However, the federal appellate courts have been confronted with analogous situations and have drawn a distinction between an on-the-scene identification and the formal lineup identification made at a later time after indictment, as in *Wade* and *Gilbert*.

In *Russell v. United States*, 408 F. 2d 1280 (D. C. Cir. 1969), cert. den. 395 U. S. 928, 23 L. Ed. 2d 245, 89 S. Ct. 1786, within a few minutes after the offense there was committed, a man matching the description given was found in the vicinity of the crime, and was identified as the man the witness had seen coming from the shop. There the court in its opinion reviewed the *Wade* and *Gilbert* decisions, called attention to language in the *Wade* decision, and concluded:

". . . This language leaves room for modification of the *Wade* rule in cases involving prompt confrontations. . . ." (p. 1283.)

The court in *Russell* distinguished *Wade* from the on-the-scene identification by stating:

". . . The confrontations disapproved in these cases [*Wade* and *Gilbert*] were post-indictment lineups. Similarly, though it spoke in broad terms, the Court was evidently focusing primarily on the routine lineup and show-up procedures employed by the police to obtain evidence for use at trial. The Court was concerned both to enhance the fairness of such procedures and to expose to judge and jury any elements of unfairness or unreliability which might attend them. In these typical cases, where counsel had been retained and time was not a factor it could find 'no substantial countervailing policy considerations * * * against the requirement of the presence of counsel.'

"The present case, however, involves an immediate on-the-scene confrontation at 5 o'clock in the morning when there would necessarily be a long delay in summoning appellant's counsel, or a substitute counsel, to observe a formal lineup. Such delay may not only cause the detention of an innocent suspect; it may also diminish the reliability of any identification obtained, thus defeating a principal purpose of the counsel requirement." (pp. 1283, 1284.)

In *Bates v. United States*, 405 F. 2d 1104 (D. C. Cir. 1968), Chief Justice Burger, then a circuit judge, wrote an opinion where two women were assaulted. A suspect was arrested in the vicinity and brought before them approximately thirty minutes later and identified. He had no counsel and none was present. In the opinion the policy reasons behind prompt identification were explained as follows:

". . . the police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh. . . ." (p. 1106.)

Turning to the evidence in the case presently before us, the suspect was presented approximately three to four hours after the robbery. The victim testified the appellant came into the station around 7 o'clock in the morning on the day of the crime and asked for a scraper for the windshield of his car and then left. Shortly thereafter he returned. Upon his return to the station he pulled a gun on the attendant and the robbery commenced. The appellant was present at the station approximately half an hour, wearing no mask, conversing with the attendant at the station concerning his identification, and the victim had seen the appellant in his automobile prior to the day of the robbery. The police later located a man matching the description the victim had given coming from a residence in front of which was a car matching the description the victim had given. The suspect admitted being at the station that morning but at first denied committing any robbery.

Here the time between the crime and the arrest was short; the finger of suspicion pointed to the appellant, but he denied the crime. He may or may not have been the robber. The only eye witness who could identify the appellant for sure was the victim, and time was important. Any delay in identifying the appellant would mean that, had he not been the robber, the real culprit would be at large with the trail growing cold while the appellant remained in custody. Under the circumstances we find the on-the-scene identification of the appellant did not infringe the constitutional counsel requirement.

In view of the appellant's voluntary confession and all of the evidence procured by the police officers investigating this case, resulting from the appellant's voluntary waiver of a search warrant,

the refusal of the trial court to permit appellant's counsel to cross-examine Detective Shackelford concerning the appellant's identification on the scene did not affect the substantial rights of the appellant to a fair trial. Identification of the appellant as the one who committed the robbery was no longer an issue in the case subject to controversy. When the trial court denied appellant's counsel the right to further cross-examine Detective Shackelford on the point in question, the state had sustained its burden of proof concerning the appellant's identification beyond a reasonable doubt —the appellant by his confession admitted his identity.

On appeal technical errors which do not affect the substantial rights of the appellant cannot be made grounds for a reversal. ( K. S. A. 62-1718. )

The appellant next challenges instructions given by the trial court.

By instruction No. 2A the trial court combined an instruction concerning the right of a defendant to refuse to testify with an instruction concerning punishment. These two instructions were stated in separate paragraphs but were given under the instruction numbered 2A.

That each instruction standing by itself was a correct statement of the law is conceded by the appellant. These instructions are consistently given to the jury in criminal proceedings. We find no merit to the argument asserted by counsel for the appellant that these instructions improperly influenced the jury.

After the trial court read its written instructions to the jury, an additional instruction which had not been reduced to writing was given. The appellant had no opportunity to see this instruction prior thereto, and was not given an opportunity to object to it. The appellant argues this instruction was erroneous.

While it was improper for a trial judge to give an oral instruction, as the record here discloses, without giving counsel for the appellant an opportunity to object, a study of the oral instruction given in the instant case discloses it was not technically an additional instruction, but a reiteration of previous written instructions. In the written instructions read to the jury, the members were advised to consider only the evidence presented during the trial.

The court in its oral statement reminded the jurors they should not be concerned about evidence which had not been presented to the court, but that they were required to decide the case on

what has been presented and not unduly speculate or decide the case on what has not been presented.

In the written instructions which the trial court read to the jury, the members were told that their independent views and deliberations with the other members of the jury were to be molded and merged into the final verdict, which was to be the unanimous verdict of each and every member of the jury. In the oral statement they were told in substance it was an erroneous concept of the jury system for a juror to feel that once having made up his mind in a case he was not entitled to change it.

On this point the appellant has failed to make it affirmatively appear that he has been prejudiced by the trial court in giving the oral instruction. It does not, therefore, constitute reversible error.

Finding no error which warrants reversal, the judgment of the lower court is affirmed.