No. 63,611

STATE OF KANSAS, *Appellee*, v. TERRY ALIRES, *Appellant*.

(792 P.2d 1019)

Opinion filed May 25, 1990.

*Lucille Marino*, assistant appellate defender, argued the cause, and *Karen E. Mayberry*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*Linda S. Trigg*, special prosecutor, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Terry Alires was convicted after a jury trial of one count of aggravated robbery (K.S.A. 21-3427) and one count of kidnapping (K.S.A. 21-3420). He appeals, claiming there was insufficient evidence to support the kidnapping conviction as alleged in the complaint and the trial court erred by not suppressing the identification obtained during an unnecessarily suggestive confrontation.

On October 13, 1988, at approximately 9:30 p.m., a female entered a convenience store and ordered the clerk, Carmela R. Frerichs, to open the cash register and to put money into a brown paper bag. To insure cooperation, the female robber raised her arm to reveal a sharp shiny object which Frerichs believed to be a knife. A male accomplice then entered the store. After the male threatened to physically harm the clerk and place her in the

cooler, the female accomplice called the male "Terry" and told him to stop frightening Frerichs.

At this point in the robbery an elderly male customer entered the store. To hide the fact that a robbery was occurring, the female robber told the clerk to act naturally and to hand over cartons of Marlboros, Kools, and Winston One Hundreds cigarettes. Frerichs was then forced out of the store and instructed to get under a combine in the parking lot. Instead, she climbed up on the combine. After the two robbers drove away, Frerichs returned to the store, activated the alarm, and asked the elderly male customer, William Parrish, to remain with her.

Officers arrived and obtained descriptions of the robbers and their vehicle. Based on a glimpse, Parrish described the man and woman as either Hispanic or black and the car as white and probably a Chevrolet model. Frerichs described the male as a Hispanic with black feathered-back hair and a mustache, who was shorter than the female. She stated the female was white, had a tattoo, and was wearing large earrings and a tan sweater. She described the car as a white older model with dark color striping—possibly a Mustang. About fifteen minutes after the descriptions were broadcast, a white Rambler occupied by a male and female was stopped by law enforcement officers about two miles into Oklahoma.

Frerichs was driven by Officer Ralston to the location where the suspects' car had been stopped. At the side of the road, illuminated by police car lights, were two individuals, handcuffed and surrounded by law enforcement officers. As Ralston slowly drove by, Frerichs observed the two suspects through the car window. Frerichs identified both suspects and stated, "I'd recognize that sweater anywhere." Frerichs was then asked to look at an object laying on the ground. She observed a screwdriver on the ground. Frerichs stated the screwdriver "could very well have been the weapon." A later search of Alires' vehicle produced three cartons of cigarettes, one each of Marlboro, Kool, and Winston, along with four packs of Marlboros scattered in the rear of the car, an open bottle of malt liquor, a six-pack of beer, a brown paper sack of coins, an open box of laundry soap, and a wad of small denomination bills.

At trial, Alires testified that he and his girlfriend left their home in Garden City and drove to Liberal to visit relatives. After obtaining marijuana from a relative, they made several beer stops prior to eating at a truck stop. Shortly after they left the truck stop, the police stopped them. When ordered to throw the car keys out the window, Alires threw the screwdriver he used as a key onto the ground.

Prior to trial, Alires' motion to suppress the evidence of the arrest scene identification and any in-court identification was denied. At trial, Alires testified that he had not been in the convenience store that night. The jury found Alires guilty of both the kidnapping and aggravated robbery charges. Pursuant to the State's request, Alires was sentenced as a habitual criminal to not less than 30 nor more than 60 years for kidnapping and not less than 30 nor more than 60 years for aggravated robbery, the sentences to run concurrently. Alires appeals.

K.S.A. 21-3420 provides:

"Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

"(a) For ransom, or as a shield or hostage; or

"(b) *To facilitate flight or the commission of any crime;* or

"(c) To inflict bodily injury or to terrorize the victim or another; or

"(d) To interfere with the performance of any governmental or political function." (Emphasis added.)

K.S.A. 21-3420(b) describes two distinct methods of perpetrating the crime of kidnapping, *i.e.*, to facilitate flight or the commission of any crime. The complaint charges Alires with kidnapping "to facilitate the commission of a crime." In addition, the jury was also instructed "[t]hat it [the kidnapping] was done with the intent to hold such person to facilitate the commission of any crime." Alires contends that, while the evidence may have shown the kidnapping was done to "facilitate flight," the taking of Frerichs occurred after the robbery was completed; therefore, the evidence introduced at trial was insufficient for a conviction of kidnapping to "facilitate the robbery." If the evidence introduced at trial does not support a conviction of the offense charged in the complaint, an accused cannot be found guilty of some other offense neither charged in the complaint nor instructed to the jury. *State v. Houck,* 240 Kan. 130, 136, 727 P.2d 460 (1986).

If a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

"(a) Must not be slight, inconsequential and merely incidental to the other crime;

"(b) Must not be of the kind inherent in the nature of the other crime; and

"(c) Must have some significance independent of the other crime in that it makes *the other crime substantially easier of commission or substantially lessens the risk of detection.*" (Emphasis added.) *State v. Buggs,* 219 Kan. 203, 216, 547 P.2d 720 (1976).

In *Buggs,* we found that "[t]he forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is." *Buggs,* 219 Kan. at 216.

In *State v. Jackson,* 238 Kan. 793, 714 P.2d 1368 (1986), we were asked to determine if the evidence was sufficient to show the defendant had acted with intent "to facilitate flight or the commission of any crime." Jackson, after accosting a woman with a knife in a horse barn, dragged the resisting victim by her hair to the doorway of the barn and attempted to push her into his car trunk. On appeal, Jackson argued that forcing the victim from the barn to the car only increased the risk of detection and was incidental activity to the commission of the attempted murder; therefore, the movement of the victim did not constitute the independent crime of aggravated kidnapping. Applying the factors set out in *Buggs,* we found that Jackson's attempt to force the victim into the trunk of his car was sufficient to establish the separate crime of aggravated kidnapping.

Unlike *Buggs,* where the victim was forced back into the store to lessen detection, here the robbers removed Frerichs from the store to hide the fact that a robbery was in progress. Forcing Frerichs to move outside the store "facilitated" the commission of the robbery, substantially lessened the risk of detection by the customer, and enhanced the robbers' escape from the scene of the crime. There was sufficient evidence at trial to support the kidnapping conviction as charged.

Alires claims that his roadside identification by the victim was so impermissibly suggestive that this identification and subse-

quent in-court identifications by the victim must be suppressed. We recognize there is the potential for suggestive pretrial identifications. In each case where the accused claims his pretrial identification was suggestive, the totality of the circumstances must be analyzed to determine whether an identification process was so impermissibly suggestive that there is a substantial likelihood of irreparable misidentification. *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967). See *State v. Ponds*, 227 Kan. 627, 608 P.2d 946 (1980); *State v. Baker*, 227 Kan. 377, 607 P.2d 61 (1980); and *State v. Reed*, 226 Kan. 519, 601 P.2d 1125 (1979).

Alires claims his roadside presentation, while handcuffed and flanked by police, was so suggestive that under *Stovall*'s "totality of the circumstances" test the only remedy is the exclusion of the identification. In *Stovall*, the United States Supreme Court held that the identification by one-on-one confrontation between the suspect and the hospitalized witness in an emergency situation was not unnecessarily suggestive and did not violate the Fifth Amendment.

The *Stovall* "totality of the circumstances" test was supplemented by five factors to be considered in evaluating the likelihood of misidentification as developed in *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972). The *Biggers* Court listed as factors:

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199.

Biggers was identified by the victim during a station house showup conducted seven months after commission of the crime. The showup procedure entailed two detectives walking the defendant past the victim. Unlike *Stovall*, the arranged station house encounter was not necessitated by exigency. Though the *Biggers* Court conceded the confrontation procedure was suggestive and police had not exhausted all possibilities in finding other physically comparable persons to the defendant, it still found the identification reliable since the victim had viewed her assailant for almost one-half hour during the commission of the crime, and

prior to the showup she had given the police a description of the defendant.

Alires claims the following facts support his position: First, during the robbery, Frerichs' view of the male suspect's face was obstructed by a cabinet. Second, Frerichs' frightened state of mind and inability to open the cash register reflects her inability to recall details. Third, Frerichs' ability to describe only the clothing of the female, *i.e.*, "I'd know that sweater anywhere," and not the male's clothing indicates a deficiency in identifying the male. Fourth, even in Frerichs' police report, the identification of Alires was based on her identification of the female by the sweater. Fifth, the roadside identification took place one hour after the conclusion of the robbery.

Unlike Alires' characterization of the circumstances during the identification, Frerichs had ample opportunity to view the male robber in the well-lighted convenience store. Her degree of attention was sufficient to detail physical characteristics of both robbers, *i.e.*, the female's tattoo, the man's mustache, and the color of the car. Frerichs never wavered and was always positive in her identification of the suspects at the roadside, the preliminary examination, the suppression hearing, and at trial. The time lapse between the robbery and identification was short, less than an hour. The facts do not indicate that the roadside showup was unnecessarily suggestive or that it increased the likelihood of misidentification of the defendant as the robber. Under the totality of the circumstances, the district court correctly determined there was no substantial likelihood of misidentification.

In addition, Alires argues that, unlike *Stovall*'s exigent circumstances, this case is similar to *Biggers* because there were no exigent circumstances that required one-on-one confrontation. We disagree. In the past we have approved one-on-one confrontations shortly after the commission of an offense, recognizing that time is crucial when there is an eyewitness who can identify a suspect and that any delay in identification could impede the police investigation. *State v. Meeks*, 205 Kan. 261, 266, 469 P.2d 302 (1970). Though *Meeks* was decided prior to *Stovall* and *Biggers*, in *Bey* we recognized the *Stovall* totality of the circumstances, as developed by *Biggers* reliability factors, which is to be considered when determining if the lineup created a substantial

likelihood of misidentification. *State v. Bey*, 217 Kan. 251, 535 P.2d 881 (1975).

In *Bey*, the defendant was present in two lineups. The first lineup was four days after the robbery and a second lineup five days after the initial lineup. The defendant was represented by counsel at both lineups. The defendant argued that being the only person to appear in both lineups invalidated the identification at the second lineup. We noted that, while it is preferable to use the same participants in each lineup, it is not feasible as participants are usually persons in custody at time of the lineup who are not available for any length of time. We found that the lineup procedures were not unduly suggestive and pointed out that in-court identifications may be admissible even if the pretrial confrontation is deficient. *Bey*, 217 Kan. at 259. Chief Justice Schroeder stated that reliability is the linchpin in determining the admissibility of identification testimony. The reliability factors of *Biggers* are also applicable for courtroom identification. *Ponds*, 227 Kan. at 630.

After reviewing the totality of the circumstances, we find nothing unnecessarily suggestive or conducive to irreparable mistaken identification requiring the trial court to suppress the identification made at the roadside showup or the identification of Alires as the robber made prior to trial and during the trial by the victim.

Affirmed.