(959 P.2d 923)

No. 77,518

STATE OF KANSAS, *Appellee*, v. ANTHONY D. LAWSON, *Appellant*.

—

Opinion filed May 22, 1998.

*Alice A. Craig* and *Debra Wilson*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before KNUDSON, P.J., ROYSE, J., and PADDOCK, S.J.

KNUDSON, J.: Anthony Lawson appeals his bench trial conviction for aggravated robbery, K.S.A. 21-3427. Lawson raises two issues on appeal: (a) whether the pretrial identification procedure was unnecessarily suggestive and led to his misidentification as the robber; and (b) whether the district court misunderstood its discretion to commit him to the Larned State Security Hospital (LSSH) in lieu of imprisonment under K.S.A. 22-3430.

The case was tried upon a written stipulation of fact that reads as follows:

"On September 21, 1995, at about 11:46 p.m. a black male in his thirties (30's) entered the Total gas station and convenience store located at 1826 West 13th Street in Wichita, Sedgwick County, Kansas. Robert Broadrick, the store's assistant manager, was the only employee on duty and was behind the sales counter filling out company reports. Mr. Broadrick saw the black male, hereinafter referred to as 'the suspect', approach the candy aisle. Mr. Broadrick could see the suspect's face from the area where he was doing his paperwork. After a few moments, the suspect came toward the sales counter, his right hand in his pocket, with a pack of gum and a pack of cigarettes. Mr. Broadrick approached the cash register to ring up an apparent sale. The suspect then drew a small handgun from his pocket or waist area and pointed it at Mr. Broadrick, demanding the money from the register. Mr. Broadrick looked down and saw the handgun, looked back at the suspect, and opened the register. The suspect instructed Mr. Broadrick to back away from the register and he complied, raising his hands in the air. Mr. Broadrick would testify that he feared that if he did not do as the suspect said that he might be shot. The suspect then reached over the counter and took cash out of the register, the handgun still in his right hand. The suspect then left the store. Mr. Broadrick immediately called 911 and reported the robbery, giving a description to the dispatcher that the suspect was a black male in his thirties (30's) wearing a blue and green plaid shirt. Additionally, Mr. Broadrick would testify at trial that the suspect had on light colored blue jeans and a dark baseball cap with a logo on the front.

"Wichita Police Officer Richard Vickers responded to the scene of the robbery, while other officers took up positions to monitor traffic along known avenues of escape. Officer Vickers contacted Mr. Broadrick at the store. Mr. Broadrick gave Officer Vickers a more detailed description of the suspect, adding that the suspect was about 5'11" tall and about 180 pounds, also indicating that the suspect had taken a $2.00 bill with a known serial number. Officer Vickers took down the known serial number provided to him by Mr. Broadrick, J24513067A.

"During this time, Officer Otis had placed his patrol car a few blocks away at 18th and Arkansas. With his headlights shining onto 18th Street, Officer Otis

spotted a silver Ford Thunderbird, the first and only vehicle to pass his position on this Thursday just a few minutes before midnight. Otis observed the driver to be a black male wearing a dark-colored shirt that appeared to be either striped or plaid. When Officer Otis turned on his overhead lights to stop the vehicle, the Thunderbird took off at a high rate of speed. In pursuit, Officer Otis radioed dispatch that the vehicle was not stopping and moments later also advised that the Thunderbird had gone out of control and had crashed into a light pole on the north side of the intersection of 21st and Waco. Officer Otis took into custody the passenger Jesse Akins, while the driver fled north on foot down an alley. A police helicopter maintained visual contact with the fleeing suspect.

"Officer Richard Vickers, aware of the car chase in progress, drove into the area of 22nd and Waco. After searching for about ten (10) minutes, Vickers located the black male suspect hiding in a thicket of bushes in the back yard of a residence. Officer Vickers took the suspect into custody and searched his person incident to arrest. In the suspect's left front jeans pocket Vickers located Seventy-Seven Dollars ($77.00) in cash, including a $2.00 bill with the serial number J24513067A. Two books of Total store matches were located in the left front pocket of a green and blue plaid flannel shirt. The suspect had a Kansas identification card identifying him as Anthony D. Lawson, Date of Birth: December 30, 1964, 5'11" tall, 190 pounds. Suspect Lawson was taken back to the scene of the accident where he was identified by Officer Otis as the driver of the Thunderbird.

"Passenger Akins and suspect Lawson were taken back to the Total store, where they were in turn shown to Mr. Broadrick at a distance of fifteen to forty (15-40) feet. Mr. Broadrick indicated he had not seen Akins in the store at any time during the evening; Mr. Broadrick immediately identified Suspect Lawson as the same individual who had pointed a gun at him while taking the money from the cash register. Suspect Lawson's green and blue plain shirt, undershirt, and blue jeans were collected by Officer Vickers at booking.

"Lab Investigator Sanderson collected a video surveillance tape from the office of the Total store and prints from the video image were made. Sanderson collected a dark blue baseball cap bearing a gold 'St. Louis Blues' logo from the front dashboard of the Thunderbird.

"A handgun was not recovered in connection with this investigation.

"Attached to and otherwise made a part of this stipulation are state's exhibits 6 (green and blue flannel shirt), 8 (blue jeans), 9 (baseball cap), 10 (partial city map with markings) and 11 a-g (video image prints)."

Based upon the stipulated evidence, the district court found Lawson guilty of aggravated robbery, a severity level 3 person felony. Following his conviction but before sentencing, the district court committed Lawson to LSSH pursuant to K.S.A. 22-3429 for an evaluation and report.

The report from LSSH stated:

"The staff concluded Mr. Lawson does not have a mental or emotional disorder for which inpatient psychiatric hospitalization is indicated at this time. Due to his past history of parole violations, the staff believes adherence to sentencing guidelines appears most appropriate. They agreed Mr. Lawson continues to be a potential danger to himself and others. The staff agreed he has a long history of depression, drug abuse, and suicide attempts, and those issues should be addressed appropriately, whether incarcerated or not."

Subsequently, at sentencing, Lawson requested that the court consider commitment for psychiatric treatment to LSSH under K.S.A. 22-3430 in lieu of imprisonment. The district court concluded that prerequisites under K.S.A. 22-3430 had not been met and, consequently, it lacked authority to order such commitment. The district court then sentenced Lawson to 85 months' imprisonment.

Lawson contends that the police violated his constitutional rights by returning him to the scene of the robbery for a show-up identification by the clerk, Robert Broadrick. The district court held that the show-up identification was neither impermissibly suggestive nor violative of Lawson's due process rights.

Although an appellate court will afford deference to the factual findings of the district court, the ultimate determination of whether evidence should be suppressed is a question of law that requires de novo review. *State v. Vandiver*, 257 Kan. 53, 57-58, 891 P.2d 350 (1995).

The legal standards to assess the validity of eyewitness identification are stated in *State v. Holloman*, 17 Kan. App. 2d 279, 282, 837 P.2d 826, *rev. denied* 251 Kan. 940 (1992). The court must first determine whether the procedure used in making an identification is unnecessarily suggestive. If it is, then the next issue is whether, under the totality of the circumstances, the impermissibly suggestive identification leads to a substantial likelihood of irreparable misidentification constituting a denial of due process. See *State v. Skelton*, 247 Kan. 34, 39-40, 795 P.2d 349 (1990).

Factors to determine whether an improvident lineup or show-up is violative of due process are:

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the

criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).

See *State v. Holloman*, 17 Kan. App. 2d at 284-86.

Absent exigent circumstances, the use of one-person show-ups by law enforcement has been condemned. *Holloman*, 17 Kan. App. 2d at 284 (citing *Stovall v. Denno*, 388 U.S. 293, 302, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 [1967]).

Here, the trial court found that the police used a two-person, not a one-person, show-up. We do not agree that this is a distinguishing circumstance from the procedure expressly disapproved in *Holloman*. Broadrick was shown one person at a time when asked to make the identification. Both men shown to Broadrick were pulled out of police cars and were wearing handcuffs. There were no exigent circumstances to support the suggestive technique used by the Wichita police officers to obtain an identification of Lawson as the robber. We hold that the identification procedure was unnecessarily suggestive. Consequently, we turn to a consideration of the evidence under the factors in *Biggers*.

The first and second *Biggers* factors examine the opportunity the victim had to view the criminal at the time of the crime and the witness' degree of attention during the attack. According to Broadrick, Lawson entered the store and, after only a few seconds, approached the counter and pulled a gun. Broadrick testified that although he glanced at the gun, he purposefully looked at the robber in order to identify him later. The robbery occurred within the store, which was apparently fairly well lit. The entire incident took 1 to 3 minutes.

Although Broadrick's exposure to the robber was fairly brief, he indicated that he studied the robber carefully. Broadrick admitted that his adrenalin began pumping when the robber showed the gun, but that he had been robbed before and knew how important it was to get a good look at the culprit. Broadrick gave the 911 operator and police officers a fairly complete description of the robber's general appearance and apparel. There was no evidence that Broadrick was hysterical or otherwise emotionally distraught which might impair his judgment or recall.

The third *Biggers* factor examines the accuracy of the witness' prior description of the criminal. Although the testimony is somewhat conflicting, it appears clear that Broadrick advised the police that the robber was a black male, was about 6' tall, and weighed 160-180 pounds. Broadrick described his clothing as a dark blue ball cap with a white logo; a black, blue, and green plaid jacket; light-colored pants or blue jeans; and white tennis shoes. When Lawson was apprehended about 20 minutes later, he was wearing a black shirt under a blue and green plaid jacket, light-colored blue jeans, and blue and black tennis shoes; a dark ball cap with a white logo was found in the car, which Lawson had been seen driving. Lawson's identification card at the time he was arrested indicated that he was 5' 11" and weighed 190 pounds.

While Lawson was an inch shorter than estimated by Broadrick and the color of his tennis shoes was different than Broadrick described, Broadrick's description otherwise matched Lawson's appearance. There also were minor discrepancies between the description reported by the 911 dispatcher and Broadrick's first reports to the officers on the scene. However, it is far from clear whether those variances could have been due to the officers' inaccurate recording of information from the dispatcher while on patrol. Several of the officers gave slightly different versions of the description initially given by the dispatcher. Overall, Broadrick gave relatively consistent descriptions of the robber, and Lawson generally matched the descriptions.

The fourth *Biggers* factor examines the level of certainty demonstrated by the witness at the confrontation. In this case, the police first showed Broadrick the passenger from the silver Thunderbird. Broadrick clearly indicated that this person was not the robber. Several minutes later, Lawson was brought to the store, and Broadrick unequivocally identified him as the robber, even from the distance of 20 feet.

The final *Biggers* factor examines the length of time between the crime and the confrontation. The record in this case indicates that Lawson was brought back to the store within about an hour after the actual robbery.

We conclude after carefully considering the evidence under the factors stated in *Biggers*, that the one-person show-up cannot be said to have denied Lawson due process of law. Accordingly, we hold that the district court did not err in denying Lawson's pretrial motion to suppress the identification.

Lawson also contends that the district court erred in finding that it lacked authority under the written report submitted by LSSH to commit him under K.S.A. 22-3430 in lieu of sentencing. Before any discussion of this issue upon its merits, we must consider whether the district court's order is appealable under K.S.A. 22-3430(c).

The Kansas Supreme Court has noted that a defendant has no right to appeal from a decision under K.S.A. 22-3430 unless he is committed under those provisions; in other words, the district court's refusal to commit a defendant in lieu of imprisonment is not reviewable. See *State v. Baker*, 255 Kan. 680, 693, 877 P.2d 946 (1994); *State v. Adkins*, 236 Kan. 259, 261, 689 P.2d 880 (1984).

Lawson's attorney acknowledges *Baker* and *Adkins* but argues these decisions are distinguishable because in this case the district court mistakenly concluded its judicial discretion to commit in lieu of imprisonment was circumscribed except as provided under K.S.A. 22-3430. Lawson contends that, except for its misinterpretation of K.S.A. 22-3430, the district court declared it would have ordered commitment.

Simply put, Lawson's argument is that the district court did not know it had judicial discretion to exercise. In *State v. Edwards*, 252 Kan. 860, 870, 852 P.2d 98 (1993), the Supreme Court held that the trial court erred in finding consecutive sentences were mandatory under applicable statutes, and because the trial court did not exercise its discretion in determining whether to impose concurrent or consecutive sentences, the sentences were vacated and remanded for such consideration. See also *Spencer v. State*, 24 Kan. App. 2d 125, 130, 942 P.2d 646 (1997), *rev'd in part on other grounds* 264 Kan. 4, 954 P.2d 1088 (1998) (imposition of consecutive sentences for original offense and offenses which occurred while defendant was on probation, under mistake belief

that court had no sentencing discretion, required remand for proper sentencing).

Based upon the reasoning in *Edwards* and *Spencer*, we conclude the district court's order denying commitment is reviewable by this court.

K.S.A. 22-3430 states, in relevant part:

"(a) If the report of the examination authorized by K.S.A. 22-3429 . . . shows that the defendant is in need of psychiatric care and treatment, that such treatment may materially aid in the defendant's rehabilitation and that the defendant and society are not likely to be endangered by permitting the defendant to receive such psychiatric care and treatment, in lieu of confinement or imprisonment, the trial judge shall have power to commit such defendant to: (1) The state security hospital or any county institution provided for the reception, care, treatment and maintenance of mentally ill persons, if the defendant is convicted of a felony . . . ."

Interpretation of a statute is a question of law which is subject to unlimited review on appeal. *State v. Masterson*, 261 Kan. 158, 161, 929 P.2d 127 (1996).

In *Adkins*, the Supreme Court interpreted an earlier version of K.S.A. 22-3430 that does not differ materially from the present statute. The court emphasized that

"K.S.A. 22-3430 grants authority to the trial judge to order commitment in lieu of imprisonment only where the required report shows:

" '[T]he defendant is in need of psychiatric care and treatment and that such treatment may materially aid in his rehabilitation and that the defendant and society is not likely to be endangered by permitting the defendant to receive such psychiatric care and treatment . . . .' " 236 Kan. at 261 (quoting from K.S.A. 22-3430 [Ensley 1981]).

The legislature, not the courts, has the exclusive power to provide the penalty to be imposed for the commission of a crime. *Chiles v. State*, 254 Kan. 888, 897, 869 P.2d 707, *cert. denied* 513 U.S. 850 (1994). It follows that the legislature may also dictate under what circumstances a commitment for psychiatric care and treatment may be made in lieu of incarceration.

We hold that the clear language of K.S.A. 22-3430(a) only confers upon the district court the power to commit in lieu of imprisonment when the psychiatric report contains the findings set forth

in the statute. Here, the report from LSSH indicates that inpatient hospitalization was not required, that Lawson posed a danger to himself and society, and that a guidelines sentence would be appropriate. Clearly, the report did not meet the standards under K.S.A. 22-3430 to support a commitment. Accordingly, the district court correctly concluded that it was without authority or discretion to commit Lawson.

Affirmed.