(2 P.3d 179)

No. 80,134

STATE OF KANSAS, *Appellee*, v. WILLIAM A. MAYBIN, *Appellant*.

Opinion filed March 17, 2000.

*Janine Cox* and *Elizabeth Seale Cateforis*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., MARQUARDT, J., and BUCHELE, S.J.

GERNON, J.: William B. Maybin appeals his conviction for one count of aggravated robbery.

Maybin was identified as a passenger in an automobile and the perpetrator of a robbery in which he placed his hand over the

victim's face, placed a gun to the victim's head, and demanded money. The victim, Marvin Grayson, positively identified the driver, Lamont Anderson, Maybin, and the automobile. Maybin was charged, tried, and convicted of aggravated robbery.

At trial, Grayson and Anderson testified against Maybin. A clerk from a convenience store near the location of the robbery also testified that an individual in a car like Anderson's purchased food items and a beer using a $20 bill at 10:27 p.m. on the night of the robbery. This testimony corroborated the presence of the items seized when Anderson's car was searched.

In his defense, Maybin asserted that Grayson was mistaken because he was high on drugs and alcohol at the time of the incident. Maybin also argued that Anderson was induced to testify against him because of a favorable plea bargain. A jury convicted Maybin as charged, and he appeals his conviction.

## LEG IRONS

Maybin first argues that his right to a fair trial was compromised because he was forced to appear before the jury with a leg restraint.

The trial court is ultimately responsible for assuring a fair trial to the accused. *State v. Ninci*, 262 Kan. 21, 54, 936 P.2d 1364 (1997). In reviewing a trial court's decision to require the accused to be tried while wearing a leg restraint, an appellate court must determine whether the trial court abused its discretion. *Ninci*, 262 Kan. at 54. Judicial discretion is abused when no reasonable person would take the view adopted by the trial court. *State v. Rucker*, 267 Kan. 816, 823, 987 P.2d 1080 (1999).

Maybin bears the burden of establishing a record that affirmatively shows that a prejudicial error occurred in his trial. Without such a record, this court must assume the trial court's action was proper. *Ninci*, 262 Kan. at 53.

In *Ninci*, the Kansas Supreme Court held that the trial court did not abuse its discretion by permitting the defendant to wear a leg restraint during the trial. The *Ninci* court noted that the trial court had independently determined that the leg restraint was unobtrusive. The holding focused on the defendant's failure to provide any evidence in the record that the jury knew he was wearing a leg

brace or that the leg brace was a restraint. *Ninci*, 262 Kan. at 53-54.

Here, Maybin presented no evidence that any of the jurors noticed the leg brace or knew it was a restraint. Maybin, however, relies on the holding in *State v. Davidson*, 264 Kan. 44, 954 P.2d 702 (1998). *Davidson* can be distinguished. In *Davidson*, the court held that the defendant was improperly prejudiced by the trial judge's commentary on the purpose of the defendant's leg brace. 264 Kan. at 52. The trial court had stated that the defendant was wearing a leg brace to prevent his escape. The *Davidson* court did not address the issue of whether the defendant had shown prejudice by the mere act of wearing the brace. Rather, that decision centered on the judge's improper comment about the brace.

## MAYBIN'S STATEMENTS

The admission of evidence is subject to the trial court's discretion and will not be overturned unless the trial court abuses its discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999). The defendant must show substantial prejudice before an appellate court will find an abuse of discretion. *State v. Grissom*, 251 Kan. 851, 931, 840 P.2d 1142 (1992).

At the preliminary hearing, Anderson testified that he did not see a gun during the robbery and that Grayson did not get in the car. At Maybin's trial, however, Anderson's testimony corroborated Grayson's version of the robbery, including the use of a gun. The State questioned Anderson about his motive for providing conflicting testimony. Anderson testified, "Yes, he told me that I should take the CCW [carrying a concealed weapon]—two CCWs and he agreed to the strong-arm robbery. . . . And we would be able to— we should work together and get out of it like that."

Maybin argues that the trial court improperly admitted Anderson's testimony that Maybin had told him to lie about the involvement of a gun in the robbery. Maybin asserts two points of error for the admission of these statements. First, Maybin asserts that the statements were inadmissible hearsay. Second, Maybin claims that the State failed to disclose his statements to him in accordance with the discovery statute.

## Hearsay

Maybin argues that his statements to Anderson were hearsay and did not fall within K.S.A. 60-460(f) or (j) because there is no independent indicia of reliability. This argument fails for two reasons.

First, Maybin's statement to Anderson is not hearsay. It was not offered to prove the truth of the matter asserted. The State was not trying to prove that Maybin would plead to strong-arm robbery if Anderson would plead to the charges for carrying a concealed weapon. Instead, the State was attempting to show Anderson's motive for lying at the preliminary hearing.

Second, even if Anderson's testimony is considered to be hearsay, Maybin's argument confuses the applicable law. K.S.A. 60-460(f) and (j) do not require an independent indicia of reliability as a prerequisite for admission.

K.S.A. 60-460 provides in pertinent part:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

. . . .

"(f) *Confessions*. In a criminal proceeding as against the accused, a previous statement by the accused relative to the offense charged, but only if the judge finds that the accused (1) when making the statement was conscious and was capable of understanding what the accused said and did and (2) was not induced to make the statement (A) under compulsion or by infliction or threats of infliction of suffering upon the accused or another, or by prolonged interrogation under such circumstances as to render the statement involuntary or (B) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same.

. . . .

"(j) *Declarations against interest*. Subject to the limitations of exception (f), a statement which the judge finds was at the time of the assertion . . . so far subjected the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."

K.S.A. 60-460(f) requires a *voluntariness* analysis, not a *trustworthiness* analysis. Maybin did not raise the issue of whether his statement was voluntary. The trial court does not have a duty to

raise the issue of voluntariness on its own initiative. *State v. Bornholdt*, 261 Kan. 644, 652-53, 932 P.2d 964 (1997). Thus, the issue of voluntariness is not preserved for appeal. The issue of voluntariness is also abandoned because it was not raised in Maybin's brief. See *State v. Valdez*, 266 Kan. 774, 784, 977 P.2d 242 (1999).

Even though the trial court did not state the basis for admitting Maybin's statement to Anderson, it was not error to admit it. The decision of the trial court is to be upheld if correct even though it may have relied upon the wrong reason. *State v. Wilburn*, 249 Kan. 678, 686, 822 P.2d 609 (1991).

### Discovery Orders

Upon request of a defendant, K.S.A. 22-3212(a)(1) requires the State to permit the defendant to inspect and copy all of his or her written or recorded statements or confessions known to exist by the State.

The State is also required to provide access to memoranda of the defendant's oral confessions, including a list of the witnesses to the confession. K.S.A. 22-3212(a)(4). This duty to disclose continues throughout the course of the prosecution. K.S.A. 22-3212(g). If the court finds that a party has failed to comply with the requirements of K.S.A. 22-3212, the court may prohibit a party from introducing the evidence, or it may enter other orders as it deems just under the circumstances. K.S.A. 22-3212(g).

A trial court's decision to exclude evidence based on the State's failure to disclose is reviewed to determine whether the trial court abused its discretion. *State v. Wanttaja*, 236 Kan. 323, 324, 691 P.2d 8 (1984). The party asserting an abuse of discretion bears the burden of establishing that abuse. *State v. Harris*, 262 Kan. 778, 785, 942 P.2d 31 (1997).

We conclude that Maybin's statement to Anderson does not fall within the parameters of K.S.A. 22-3212(a)(1) because the statement was not a written or recorded statement. The statement was made orally. Oral statements fall under K.S.A. 22-3212(a)(4).

Likewise, Maybin's statement does not fall within the parameters of K.S.A. 22-3212(a)(4), which only applies to *confessions* made through third parties and does not include other types of state-

ments. Given our reading of Kansas law, Maybin's statement is not a confession. See *State v. Green*, 254 Kan. 669, 683, 867 P.2d 366 (1994).

Maybin did not say that he committed strong-arm robbery. Instead, he bargained with a codefendant to plead to charges for strong-arm robbery. The statement is merely a circumstance that implies guilt. It is not a confession of guilt.

Maybin's motion for discovery requested copies of "any and all statements he is alleged to have made to law enforcement or any of the State's endorsed witnesses" pursuant to K.S.A. 22-3212. Maybin argues that the State violated the court's discovery order. This argument is without merit. K.S.A. 22-3212 does not apply to Maybin's statement to Anderson. Thus, the State did not violate the discovery order.

Maybin has failed to establish any abuse of the trial court's discretion. Accordingly, the trial court did not err by admitting the statement Maybin made to Anderson.

## MISTRIAL MOTION

Maybin moved for a mistrial when Anderson testified that Maybin had been to the penitentiary before. The trial court conducted a hearing outside the jury's presence to determine whether the State had violated the motion in limine excluding any reference to Maybin's previous criminal history. The trial court determined that the order had been violated but denied Maybin's motion, finding that the statement was relevant and not overly prejudicial.

K.S.A. 22-3423(b) and (c) permit the trial court to declare a mistrial when a legal defect in the proceedings would make the judgment reversible as a matter of law and the defendant requests or consents to the declaration, or when prejudicial conduct makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution.

The decision to declare a mistrial is within the trial court's sound discretion and will not be disturbed on appeal unless there is a clear showing that such discretion was abused. Judicial discretion is abused when no reasonable person would adopt the view taken

by the trial court. *State v. Rinck*, 256 Kan. 848, 853, 888 P.2d 845 (1995).

In *Rinck*, a witness testified that he met the defendant after the defendant had gotten out of prison. The defendant moved for a mistrial, but the trial court denied the motion. The Kansas Supreme Court determined that the statement was unsolicited and upheld the trial court's refusal to grant a mistrial. In making its decision, the *Rinck* court noted that the defendant's record was not mentioned any further during the trial and the trial court offered to give a limiting instruction, but the offer was declined. 256 Kan. at 853-54.

The facts in this case parallel those in *Rinck*. The prosecution did not expect Anderson to testify about Maybin's previous imprisonment and did not solicit that testimony. The court offered to give a limiting instruction, but Maybin chose not to request the instruction. Finally, there was no further mention of Maybin's prior criminal record.

Based on *Rinck*, we conclude that the trial court did not abuse its discretion in denying Maybin's request for a mistrial.

## PROSECUTORIAL MISCONDUCT

Maybin argues that the prosecutor improperly referred to him as a "predator," thus prejudicing the jury against him and denying him his right to a fair trial.

When reviewing statements made by the prosecutor during closing argument, an appellate court applies a two-step analysis. *State v. White*, 263 Kan. 283, 306, 950 P.2d 1316 (1997). First, the appellate court determines whether the remarks were beyond the permitted scope of closing argument. Under this analysis, the prosecution is given a wide latitude in presenting its theory of the case to the jury. 263 Kan. at 306. Closing argument, however, must be confined to the evidence admitted. *State v. Gardner*, 264 Kan. 95, 106, 955 P.2d 1199 (1998). Second, if the court determines that the remarks were improper, it must determine whether the remarks, when viewed in light of the record as a whole, were so prejudicial as to amount to reversible error.

Improper remarks by the prosecutor during closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and deny defendant his or her right to a fair trial. *White*, 263 Kan. at 306. Scrutinizing the facts of each case, an appellate court must determine whether the improper comments were harmless error. The improper remarks may be considered harmless if the appellate court finds that they had little, if any, likelihood of changing the result of the trial.

Maybin argues that the prosecutor's comments were not based on the evidence. The prosecutor stated: "The defendant goes out with a guy from his neighborhood, Lamont Anderson. Doesn't have a job, doesn't have any money, but he wants some money, and he's got a gun." All of these statements are supported by evidence in the record.

Maybin also argues that the term "predator" prejudiced the jury against him because of the animalistic connotations, the characterization of him as sinister, and the inference that he routinely committed robberies.

We have studied the cases cited by Maybin in support of his prosecutor misconduct issue and conclude that they can be distinguished, either in the words used or in the context of the case. We acknowledge the cases cited: *State v. Ruff*, 252 Kan. 625, 847 P.2d 1258 (1993); *State v. Zamora*, 247 Kan. 684, 803 P.2d 568 (1990); *State v. Eastridge*, 20 Kan. App. 2d 973, 894 P.2d 243 (1995).

Several other states have refused to find prosecutorial misconduct when the prosecutor refers to the defendant as a predator. See, *e.g.*, *Williams v. State*, 627 So. 2d 994, 996 (Ala. Crim. App. 1992) (referring to the defendant as a predator was a legitimate comment on the evidence); *People v. Hines*, 15 Cal. 4th 997, 1062, 64 Cal. Rptr. 2d 594, 938 P.2d 388 (1997) (referring to defendant as a predator was fair comment on the evidence presented); *People v. Alvarez*, 14 Cal. 4th 155, 241-42, 58 Cal. Rptr. 2d 385, 926 P.2d 365 (1996) (calling the defendant a "creep" worse than a "predator" was not prosecutorial misconduct; although it was unnecessarily colorful, the comments were consistent with the evidence); *State v. Link*, 916 S.W.2d 385, 388 (Mo. App. 1996) (calling the defendant a predator was not prosecutorial misconduct; although

the court did not condone the use of denuncitory epithets towards defendants, the characterization had no decisive effect on the jury); *People v. Chapin*, 265 App. Div. 2d 738, 697 N.Y.S.2d 713 (1999) (finding no misconduct for referring to defendant as a predator; although comments were inappropriate, they were not so egregious to warrant reversal in light of the totality of the evidence and the trial court's curative instructions); *People v. Brown*, 252 App. Div. 2d 835, 836, 675 N.Y.S.2d 461 (1998) (calling defendant a predator was not prosecutorial misconduct because any prejudice was ameliorated by the trial court's limiting instructions and the overwhelming proof of guilt); *State v. Trull*, 349 N.C. 428, 454, 509 S.E.2d 178 (1998) (referring to defendant as a predator was not so grossly improper as to require the trial court to intervene *ex mero motu* [voluntarily without an objection]); *Payne v. Commonwealth*, 257 Va. 216, 226, 509 S.E.2d 293 (1999) (calling the defendant a predator was fair comment on properly admitted evidence in a sentencing hearing before a jury to determine whether the defendant would receive the death penalty); *Tennant v. State*, 786 P.2d 339, 346 (Wyo. 1990) (calling defendant a predator was not prosecutorial misconduct in light of the record as a whole).

The Washington Court of Appeals, however, recently held that referring to a defendant as a predator was prosecutorial misconduct because such tactics were clearly intended to inflame the passion and prejudice of the jury. *State v. Rivers*, 96 Wash. App. 672, 675-76, 981 P.2d 16 (1999).

We agree with the reasoning of the Washington Court of Appeals. For the most part, the use of the word predator is designed to inflame the passion and prejudice of the factfinder. The message the prosecutor often wants to convey, by implication, is: Get this predator off the streets, or you or your family might be next.

Our conclusion concerning the use of the word "predator" in this context does not resolve the issue of whether the use constitutes reversible error under these facts.

Improper remarks may be considered harmless if the appellate court finds that they had little, if any, likelihood of changing the result of the trial. *White*, 263 Kan. at 306.

The State presented a significant amount of evidence against Maybin, including the victim's testimony and certain identification, the codefendant's testimony, and the physical evidence found in the car that connected Maybin to the $20 bill. Given the amount and weight of the evidence, we conclude the "predator" remark was harmless and not enough to require reversal.

## CUMULATIVE ERRORS

Maybin argues that the cumulative errors in this case require reversal of his conviction and remand for a new trial. Cumulative errors require reversal when the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. *White*, 263 Kan. at 308. Maybin has demonstrated no such minimum error to this court so as to require reversal. As a result, there are no errors that can be aggregated into cumulative error.

## MOTION TO SUPPRESS

Maybin argues that the evidence found in the car should have been suppressed because the initial stop of the car was made without reasonable suspicion. Although generally a passenger has no standing to challenge the search of a car that does not belong to him, Kansas has determined that a passenger can challenge the search of a car if the search results from an illegal stop. *State v. Epperson*, 237 Kan. 707, 717-18, 703 P.2d 761 (1985). The passenger's right to challenge the search is a consequence of the illegal seizure of the passenger's person. 237 Kan. at 718.

In reviewing a trial court's decision about whether to suppress evidence, an appellate court looks for substantial competent evidence to support the trial court's decision. *State v. Ninci*, 262 Kan. at 29. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *State v. Wonders*, 263 Kan. 582, 589, 952 P.2d 1351 (1998).

K.S.A. 22-2402(1) permits a law enforcement officer to stop a person in a public place without making an arrest if the officer *reasonably suspects* that the person is committing, has committed,

or is about to commit a crime. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In cases involving a *Terry* stop, whether an officer has a reasonable and articulable suspicion to justify a stop will depend on the facts of the case. Kansas courts have recognized that the location, time of day, previous reports of crime in the area, and furtive actions of suspects may well justify a stop. See *State v. Holthaus*, 222 Kan. 361, 364, 564 P.2d 542 (1977); *City of Garden City v. Mesa*, 215 Kan. 674, 681, 527 P.2d 1036 (1974); *State v. Hazelwood*, 209 Kan. 649, 655, 498 P.2d 607 (1972); *State v. Kirby*, 12 Kan. App. 2d 346, 353, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988).

It is equally clear, however, that the time of day and reports of crime in the area will not in and of themselves justify a *Terry* stop. See *Epperson*, 237 Kan. at 713-14; *State v. Jackson*, 213 Kan. 219, 223, 515 P.2d 1108 (1973).

The trial court found that the officers had a reasonable suspicion to stop Anderson's car. The evidence presented by the State supports the trial court's decision.

We conclude that the stop was not illegal. Maybin lacks standing to contest the search and seizure of items in the vehicle. See *Epperson*, 237 Kan. at 717-18.

## ONE-PERSON SHOW-UP IDENTIFICATION

The admission of identification testimony is an evidentiary question. When reviewing questions regarding the admission of evidence, the appellate court will give deference to the factual findings of the trial court, but the ultimate determination of whether evidence should be suppressed is a question of law that requires de novo review. *State v. Lawson*, 25 Kan. App. 2d 138, 141, 959 P.2d 923 (1998).

Kansas applies a two-step test for determining whether eyewitness identifications should be excluded. First, the trial court must determine whether the procedure used in making the identification was unnecessarily suggestive. If the procedure was unnecessarily suggestive, the court must evaluate whether the procedure would lead to a substantial likelihood of misidentification. When

analyzing the second prong of the test, the court must look at the totality of the circumstances. *State v. Holloman*, 17 Kan. App. 2d 279, 282, 837 P.2d 826, *rev. denied* 251 Kan. 940 (1992). Kansas uses the five factors set out in *Neil v. Biggers*, 409 U.S. 188, 199, 34 L.Ed. 2d 401, 93 S. Ct. 375 (1972), to determine whether there is a substantial likelihood of misidentification. 17 Kan. App. 2d at 282. The *Biggers* factors include

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200.

Maybin argues that the one-person show-up identification was unnecessarily suggestive. He relies on *Holloman* for the proposition that one-person show-up identifications have been condemned in Kansas. 17 Kan. App. 2d at 284. In *Holloman*, a store clerk notified security that she had been robbed and provided a description of the robber including his clothing, smell, and voice. She also informed them of the direction the robber headed when he left. The security officers followed a set of footprints in the snow to the defendant's mother's house. Upon searching the house, the officers found wet clothing that matched the description given by the store clerk and a bank bag containing cash. An hour after the robbery, the police showed the clerk the items seized from the house and allowed her to smell the clothing. The police also showed the suspect to the clerk on a television monitor and allowed her to hear him speak. Based on these observations, the clerk identified the suspect as the robber. The *Holloman* court determined that the one-person identification was unnecessarily suggestive but upheld its admission, finding that the clerk's identification was reliable based on the *Biggers* factors. 17 Kan. App. 2d at 284-87.

Maybin's reliance on *Holloman*, however, fails to consider *State v. Alires*, 246 Kan. 635, 792 P.2d 1019 (1990). In *Alires*, the police drove the victim of a robbery by two individuals, who were handcuffed and in police custody. The victim positively identified them as the individuals who had robbed the convenience store where she worked. The Kansas Supreme Court held that the one-person

show-up identification was not unnecessarily suggestive or substantially likely to lead to misidentification. 246 Kan. at 640-41. The court's decision focused on the victim's "ample opportunity to view the male robber in the well-lighted convenience store," her attention to detail in describing the defendant's mustache, the female robber's tatto, the color of the car, the short amount of time between the robbery and the identification, and her unwavering certainty of the identification. 246 Kan. at 640. The *Alires* court also noted that Kansas has "approved one-on-one confrontations shortly after the commission of an offense, recognizing that time is crucial when there is an eyewitness who can identify a suspect and that any delay in identification could impede the police investigation." 246 Kan. at 640.

In *State v. Lawson*, 25 Kan. App. 2d at 140, a robbery victim called 911 immediately after the robbery and provided a description of the robber as a black male in his thirties, about 5 ' 11" tall, weighing 180 pounds, and wearing a green and blue plaid shirt. Shortly thereafter, police spotted a suspect matching the victim's description near the area of the robbery. After arresting the suspect, the police returned him to the scene of the robbery for identification by the victim. This court determined that the one-person show-up identification was unnecessarily suggestive but upheld the admission of the identification based on the *Biggers* factors. 25 Kan. App. 2d at 142-44. The *Lawson* court relied on *Holloman* but did not consider *Alires*.

While we might conclude that the identification procedure used here was unduly suggestive, it survives, in our view, the tests required in *Biggers*.

### The opportunity of the witness to view the criminal at the time of the crime.

Grayson testified that he could see the robber "through the peek of [his] hand." Moreover, the robber's hand was not over Grayson's face during the entire robbery. Grayson testified that the robber frisked him looking for his money.

Grayson also had an opportunity to observe the occupants of the car before the robbery. He testified that the driver had called him

over to the car and conversed with him briefly before the robbery occurred. This testimony is contradicted by the testimony of a police officer and Anderson, who stated that Grayson spoke with the passenger rather than the driver. In either case, Grayson had an opportunity to observe the robber before the stress of the robbery occurred.

Maybin argues that Grayson's perception was adversely affected by the danger and stress of the crime itself but points to no evidence in the record that would establish that Grayson was unable to see the robber.

Although Grayson did not describe the clothing worn by the robber, he accurately described his skin color, hair, and age.

Grayson also provided a fairly detailed description of the car. He told the police officer that the car was a dark-colored, eighties-model, four-door sedan that was clean and well-kept. The car was actually a brown, eighties-model Buick. Although Grayson mistakenly described the car as being a maroon, eighties-model, Cadillac Seville, the color and body style of Anderson's car were not significantly different than the car Grayson described. In addition, he accurately described the car as being clean and well-kept.

### The level of certainty demonstrated by the witness at the confrontation

When Grayson initially identified Maybin as the robber during the one-person show-up identification, Grayson merely stated that he looked like the person that had held a gun to his head in the car. Grayson also identified the car as the one that he had been robbed in and separately identified Anderson as the driver. Grayson identified Maybin and Anderson after looking at them for only a minute or two each. Grayson did not state that he was 100 percent certain, and the officer did not specifically ask Grayson about his level of confidence. There is no testimony, however, indicating that Grayson was unsure of his identification.

### The length of time between the crime and the confrontation

Grayson contacted the Olathe police officer to report the robbery at approximately 10:10 p.m. Officers stopped Anderson's car

at approximately 10:30 p.m. Although there is no testimony regarding the time of Grayson's identification, the time of the arrest would indicate that it occurred approximately 1 hour after the robbery occurred.

Reliability is the key for determining whether identification testimony is admissible. *Holloman*, 17 Kan. App. 2d at 286. Reviewing all of the factors from *Biggers* leads to the conclusion that the identification was reliable. As a result, the trial court did not err by admitting Grayson's identification of Maybin into evidence.

As an alternative argument, Maybin urges this court to find that all one-person show-up identifications are excluded per se. A per se exclusionary rule, however, does not follow existing Kansas Supreme Court precedent. See *Alires*, 246 Kan. at 640-41. This court is duty bound to follow Kansas Supreme Court precedent, unless there is some indication that the court is departing from its previous position. *State v. Allen*, 21 Kan. App. 2d 811, 816, 908 P.2d 1324 (1995), *rev. denied* 259 Kan. 928 (1996). There is no indication that the Supreme Court has reconsidered its position in *Alires*.

Affirmed.